RITA VALENTINE, Respondent, v CITY OF NEW YORK, Appellant, and FILOMENA CASTORINA, Respondent.

First Department, May 13, 1982

APPEARANCES OF COUNSEL

*George Ian Brandon* of counsel (*Frederick A.O. Schwarz, Corporation Counsel,* attorney), for appellant.

*Martin S. Rothman* of counsel (*Joseph Irom* and *Jeffrey E. Rothman* with him on the brief; *Paul Bank, P.C.,* and *Seligson, Rothman & Rothman,* attorneys), for Rita Valentine, respondent.

*Alvin P. Bluthman* of counsel (*Nathan Cyperstein,* attorney), for Filomena Castorina, respondent.

OPINION OF THE COURT

SULLIVAN, J. P.

The City of New York has been found negligent for failing to remove from a city sidewalk an accumulation of ice and snow, which constituted a dangerous condition and caused plaintiff to fall and sustain injuries.[1] Because, as a matter of law, an insufficient time had elapsed between the end of the snowfall and the accident to enable the city, in

---

1. The complaint against the abutting owner was dismissed on motion following the trial. Both the city's motion for a directed verdict and its cross claim against the abutting owner were denied.

the exercise of reasonable care, to remove the snow and ice from the sidewalk, the judgment should be reversed and the complaint dismissed.

Evidence at the trial established that sometime on December 16, 1973 a severe ice storm, described as the second worst in the preceding 50 years, and consisting of a combination of snow, sleet and freezing rain, struck the metropolitan area. The storm continued until midnight of December 17, and deposited between two and three inches of precipitation on the ground. The city, in its aftermath, looked "like a skating pond". The three-inch "icy mass" which covered the ground could not be removed by shovel but had to be chopped away with ice picks. In the approximately 30¼ hours between the end of the storm and plaintiff's fall, the temperature did not rise above freezing, and dropped to as low as 17 degrees Fahrenheit.

The accident occurred sometime around 6:15 A.M., on December 19, when plaintiff, then 45 years of age, on her way to work from her home just several houses away, slipped and fell on the sidewalk in front of 4123 Murdock Avenue, and suffered injuries to her left ankle. Murdock Avenue is a residential street in the northeast Bronx, abutted by one- and two-family private homes.

The city's snow removal operations, which extend over 6,401 miles of streets and 11,420 miles of sidewalk, broken down into 58 snow removal districts, began on December 16 and continued at least until December 21. The snow removal district in which Murdock Avenue is situated consists of 120 miles of streets and 240 miles of sidewalks, abutted by as many as 19,483 dwelling units. In the three days from December 17 to December 19, the city assigned 35, 25 and 33 men, respectively, to snow removal duty in this district alone. Working overtime they used as many as 32 pieces of snow removal equipment in one day, including plows and front-end loaders, and spread, in the three-day period, 1,421 tons of salt.

Given the freezing temperature, the amount of snow and ice that had to be removed, the problems inherent in such a project, and the brevity of time between the end of the storm and the accident, it is not surprising that at the time

of the accident the city had not cleared the ice and snow which had fallen on the sidewalk in front of 4123 Murdock Avenue, a private dwelling on a residential street, not in immediate proximity to any intersection or crosswalk. To charge the city with the responsibility to clear this sidewalk seems to us, in the circumstances presented, to be not only unreasonable but also totally unrealistic.

The rule is well established that a municipality is not liable in negligence for injuries sustained by a pedestrian who slips and falls on an icy sidewalk unless a reasonable time has elapsed between the end of the storm giving rise to the icy condition and the occurrence of the accident. (See *Mandel v City of New York,* 44 NY2d 1004; *Hamill v City of New York,* 78 AD2d 792, affd 52 NY2d 1045; *Schlausky v City of New York,* 41 AD2d 156.) A reasonable time is that period within which the municipality should have taken notice of the icy condition and, in the exercise of reasonable care, remedied it by clearing the sidewalk or otherwise eliminating the danger. (See *De Boulet v City of New York,* 192 App Div 359, 364.) This standard of municipal responsibility was enunciated by the Court of Appeals at least as early as 1890 when, in *Harrington v City of Buffalo* (121 NY 147, 151), it stated: "[N]egligence may be inferred from the omission by the [municipal] corporation to cause dangerous obstructions to be removed from the streets after sufficient time has elapsed to afford a presumption of knowledge of their existence and an opportunity to effect their removal."

The Court of Appeals reaffirmed this principle as recently as 1978 in *Mandel v City of New York (supra,* at p 1005), wherein it held that the plaintiff had failed to prove that the city "was negligent in permitting the extraordinary snowfall to exist for an unreasonable period of time or that it had a reasonable opportunity to remedy the condition". Two recent decisions of this court also support this view. In *Hamill v City of New York (supra),* we stated that "[p]laintiff had the burden of showing that the city permitted an unusual and dangerous accumulation of ice and snow to remain on the sidewalk where the accident occurred for an unreasonable period of time". In *Schlausky v City of New York (supra,* at p 158), we held that a munici-

pality is liable for failure to clear snow and ice from its sidewalks only if "a dangerous condition was created and permitted to exist for such a period as would reasonably have afforded an opportunity to remedy the condition."

The reasonableness of the time within which a municipality must respond to its duty to clear the sidewalks is measured from the time that the storm comes to an end since, as one court has noted, "[R]esponsibility for ice conditions arises, at the most, only after the lapse of a reasonable time for taking protective measures and never while a storm is still in progress." (*Valentine v State of New York*, 197 Misc 972, 975, affd 277 App Div 1069; see, also, *Kelly v Manhattan Ry. Co.*, 112 NY 443, 452; *Falina v Hollis Diner*, 281 App Div 711; *Bressler v Rule Realty Co.*, 219 App Div 529, affd 248 NY 619; *McAuley v United Cigar Stores Co. of Amer.*, 204 App Div 356, affd 236 NY 633.)

Applying these well-settled principles to the facts at bar, and taking note of the severity of the storm and the city's efforts to cope with the resultant icy condition of the streets and sidewalks, we conclude that the interval of some 30 hours between the storm's cessation and plaintiff's fall was insufficient, as a matter of law, to charge the city with the duty of clearing the sidewalk where plaintiff fell. In addition to its severity the ice storm, the second worst to strike this area in 50 years, was followed by temperatures which never rose above 32 degrees Fahrenheit and reached a low of 17 degrees Fahrenheit on the morning of the accident. Courts have consistently taken into account the attendant difficulties which a municipality faces in removing snow and ice during freezing weather. (See, e.g., *Cockfield v City of New York*, 283 App Div 806; *Rapoport v City of New York*, 281 App Div 33, 34, affd 306 NY 636; *Yonki v City of New York*, 276 App Div 407, 408, app dsmd 303 NY 852; *Goldstein v Dattelbaum*, 258 App Div 863; *Eckert v City of New York*, 211 App Div 474, 475; *Foley v City of New York*, 95 App Div 374, 377; *Hawkins v Mayor, Aldermen & Commonalty of City of N. Y.*, 54 App Div 258, 259.)

In cases of exceptionally severe snow storms the courts, recognizing the difficulties involved, have consistently allowed the city a considerable length of time to clear the sidewalks of snow and ice. For example, the Second De-

partment held that the city, following a 16.7-inch snowfall in 1948, was not liable for accidents occurring 80 hours after the storm (see *Ganek v City of New York,* 286 App Div 1036); 84 hours after the storm (see *Thompson v Rose,* 283 App Div 735); and 120 hours after the storm (see *Weisfeld v City of New York,* 282 App Div 739). Similarly, this court dismissed actions against the city where the accidents took place 60 hours (*Yonki v City of New York, supra,* at p 411), and 90 hours (see *Rapoport v City of New York, supra*), after a recordbreaking 25.8-inch snowfall in 1947. The Court of Appeals earlier had adopted the same approach in affirming orders of this court which had reversed judgments against the city where the accidents occurred five days (see *Kirsch v City of New York,* 289 NY 684, affg 256 App Div 903) and eight days (see *Reutlinger v City of New York,* 281 NY 592, affg 255 App Div 848), after an 18-inch snowfall in 1935. In *Eckert v City of New York (supra),* this court refused to hold the city liable for an accident which took place 61 hours after a 17.5-inch snowfall in 1920.

Although often producing a much smaller amount of accumulation than the snow storms involved in the cases cited, *supra,* a severe ice storm such as the one here, by coating the ground with a layer of ice, can create the same hazardous, icy condition as a much heavier snowfall, and pose problems of street and sidewalk clearance just as serious. As this court has noted, it is the formation of ice, usually caused by a combination of freezing temperatures and packing of the snow from pedestrian traffic, that constitutes the hazardous sidewalk condition after a heavy snowfall. (See *Foley v City of New York, supra,* at p 376; *Crawford v City of New York,* 68 App Div 107, 111, affd 174 NY 518; *Hawkins v Mayor, Aldermen & Commonalty of City of N. Y., supra,* at pp 260-261.) Ice is even more difficult to remove than snow. In *Taylor v City of Yonkers* (105 NY 202, 206), the Court of Appeals went so far as to suggest that a municipality need not take any action at all to remove ice caused by a freezing rain but may, instead, await a thaw: "This frozen surface it is practically impossible to remove until a thaw comes which remedies the evil. The municipality is not negligent for awaiting that result. It may and should require householders, when the danger

is great, to sprinkle upon the surface ashes or sand or the like, as a measure of prudence and precaution, but is not responsible for their omission. It is no more bound to put upon the ice, which it cannot reasonably remove, such foreign material than to cover it with boards. The emergency is one which is common to every street in the village or city, and which the [municipality] is powerless to combat."

Of course, "[t]here is no formula for determining liability on the basis of any ratio between the number of inches of snowfall and the time elapsed before the happening of the accident and, ordinarily * * * these factors, as well as all the other conditions, constitute a jury question." (*Yonki v City of New York,* 276 App Div 407, 410, *supra.*) But, in *Yonki,* this court held (p 411) that "as a matter of law * * * sixty hours was not sufficient time under the circumstances to impose upon the city a citywide burden of sidewalk snow clearance." The court stated (pp 410-411), "[N]ot every case under all circumstances makes a jury risk. The combination of facts in a particular case may be such that it falls beyond the realm of a jury risk." Similarly, the totality of circumstances in the instant case was such as to remove any factual question from the jury.

In discharging its duty of snow removal a municipality, of necessity, must establish a set of priorities. The nature and extent of the measures which it undertakes are important in determining the reasonableness of its response and in resolving the ultimate question of whether a sufficient period of time has elapsed so as to charge it with negligence for its inaction in clearing a specific area. In *Yonki* (*supra,* p 409), this court outlined the responsibility of the city in clearing the streets and sidewalks after a storm: "While it is the objective and duty of the city to clean both streets and sidewalks as soon as reasonably possible, the work obviously cannot proceed at a pace at all places at the same time, and there is a necessary rationing of the working force and certain priorities. Ahead of sidewalks come the roadways, which must be cleared as immediately as possible for the emergency traffic of police, fire apparatus and ambulances and for essential traffic engaged in the distribution of foodstuffs and other necessities of life. Also

ahead of sidewalks is the removal of snow from various terminals in the city and market areas where food and fuel are delivered and disbursed. Then within the sidewalk areas there is a proper priority in favor of business and shopping sections, where there is [a] heavy congestion of pedestrian traffic." Here, as the record demonstrates, the priorities established by the city in confronting the icy conditions created by the storm were in conformity with accepted standards. It did not attempt to clear sidewalks until all primary and secondary streets had been cleared. Murdock Avenue is, as the testimony shows, "a tertiary street". With sidewalks, priority was given to areas of heavy pedestrian traffic, such as shopping centers, main thoroughfares, crosswalks, and bus stops.

The city deployed 35 men in the district in which the accident occurred on December 17 — during the course of the storm and before the city's obligation of snow removal had even arisen — and it deployed 25 men on December 18 and 33 men on December 19. While the record discloses that probably all of the men assigned to this district on December 17 and 18 were working on clearing the streets, and none on sidewalks, on December 19, roughly 18 of the 33 men working on snow removal were clearing sidewalks. That the city concentrated its workers on clearing the streets on December 17, the day the storm ended, and December 18, the first day after the storm, is entirely consistent with the priorities endorsed in *Yonki (supra)*. Thus, on December 19, only the second day after the storm, the city was able to transfer men to the task of clearing sidewalks, presumably because much of the work on the streets had been completed.

Furthermore, a number of cases have held that if, as here, a municipality has passed an ordinance requiring abutting landowners to remove the snow and ice from their sidewalks,[2] it may, before taking any action itself, wait a reasonable time for them to perform their legal duty. (See *Taylor v City of Yonkers,* 105 NY 202, 205-206, *supra; Foley v City of New York,* 95 App Div 374, 376, *supra; Crawford v City of New York,* 68 App Div 107, 111, *supra;*

---

**2.** (Administrative Code of City of New York, § 755 [3]-2.0, subd a.)

*Hawkins v Mayor, Aldermen & Commonalty of City of N. Y.,* 54 App Div 258, 260, *supra.*)

Finally, we note that while, as stated earlier, no formula exists for determining liability on the basis of the time lapse between the end of the storm and the accident (see *Yonki v City of New York, supra,* at p 411), we are unaware of any reported case involving a single snow or ice storm where the city has been held liable for an accident occurring a mere 30¼ hours after the end of the storm.[3] Indeed, the shortest time period for which the city has been held liable in such a case is 44 hours. (See *Janota v City of New York,* 297 NY 942.) In the two cases involving elapsed time periods closest to that in issue, the complaints were dismissed on appeal. (See *Goldman v City of New York,* 264 App Div 740 [36½ hours]; *Kelly v City of New York,* 257 App Div 863 [28 hours].) While *Cohen v New York City Housing Auth.* (44 AD2d 817), upon which plaintiff relies, involves an accident occurring less than 36 hours after the termination of a snowfall, the accident there took place on a private walk maintained by the housing authority, certainly a distinguishing circumstance.

In sum, the evidence was insufficient to raise a question of fact as to whether a reasonable time had elapsed between the end of the ice storm and the accident, and thus no question of fact as to whether the city was negligent was presented. The city's motion for a directed verdict should have been granted.

Accordingly, the judgment, Supreme Court, Bronx County (L. SMITH, J.), entered December 19, 1980, awarding plaintiff the sum of $70,000, should be reversed, on the law, without costs or disbursements, and the complaint dismissed.

MILONAS, J. (dissenting). I would affirm the judgment awarding damages for personal injuries suffered by plaintiff.

The jury, following a five-day trial, rendered a unanimous verdict in favor of plaintiff and against the defen-

---

3. In *Pfeffer v City of New York* (25 AD2d 889), upon which plaintiff relies, the court reversed a dismissal of the complaint on several grounds. It noted that the ice "had existed a minimum of 24 hours and *probably considerably longer.*" (Emphasis added.)

dant, the City of New York. The majority now proposes to substitute its judgment for that of the jury, contending that, as a matter of law, insufficient time had passed between the end of the snowstorm and the accident to charge the city with responsibility for its failure to clear the sidewalk. It is acknowledged that "[t]here is no formula for determining liability on the basis of any ratio between the number of inches of snowfall and the time elapsed before the happening of the accident" (*Yonki v City of New York,* 276 App Div 407, 410, app dsmd 303 NY 852). However, the majority has determined that in view of the severity of the storm and the extensiveness of the required snow and ice removal operations, the city cannot be deemed accountable since the shortest time period for which a municipality has been held liable in such a situation is 44 hours, and what is involved here is only a period of 30¼ hours after the cessation of precipitation. It would thus appear that the crucial, and undetermined, time span lies somewhere between 30¼ hours and 44 hours.

The jury, having heard all the evidence, found the city remiss in the performance of its duty to maintain the sidewalks in a safe condition for pedestrians to use. How much time is necessary for the city to be reasonably expected to take affirmative action on behalf of the public welfare is a question which, along with all the other factual circumstances surrounding the storm and its aftermath, was properly left to the jury's determination.

Although the opposing parties strongly disagreed as to the severity of the weather conditions, there certainly was more than sufficient basis in the evidence to justify the jury's verdict. The jury could reasonably conclude that although the storm began on December 16, 1973, the streets were untouched by the city until December 19, and that the precipitation was not extensive, finally amounting to only 2.8 inches of snow and ice, some of which had already evaporated by the time of the accident. The evidence is also adequate to demonstrate that the plaintiff fell on a path worn on snow and ice by pedestrian traffic, which was described as being lumpy and bumpy and dark like dirt. Despite the supposed difficulty by the city in removing the accumulation, some abutting landowners, includ-

ing the adjacent owner, had already cleared the area in front of their houses. Further, the jury could reasonably find that the storm had actually effectively ended some 40 hours before the accident and what followed were merely traces of precipitation.

As the United States Supreme Court declared in *Tennant v Peoria & Pekin Union Ry. Co.* (321 US 29, 35): "It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable \* \* \* That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

Regardless of the fact that the jury decided to the contrary, the majority has determined that the city's recitation of the facts is more persuasive than that of the plaintiff. Yet, it is incumbent upon us to view the evidence in a manner most favorable to the plaintiff, since it was she who prevailed at trial (see *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 312, n 1). The jury has made an appropriate and supportable finding in this case, and we should not disturb it.

Ross, Carro and Lupiano, JJ., concur with Sullivan, J. P.; Milonas, J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, entered on December 19, 1980, reversed, on the law, without costs and without disbursements, the judgment vacated and the complaint dismissed.