JUAN M. CANDELIER, Appellant, v CITY OF NEW YORK, Respondent.

First Department, June 23, 1987

## APPEARANCES OF COUNSEL

*Zeitlan & Zeitlan, P. C.,* and *Alexander J. Wulwick* for appellant.

*Dana Robbins* of counsel *(Larry A. Sonnenshein* with her on the brief; *Peter L. Zimroth,* attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

At about 7:30 A.M. on February 15, 1978, plaintiff, a 21-year-old student, stepped off a bus and onto an ice-covered sidewalk at the northeast corner of 145th Street and Amsterdam Avenue in Manhattan, and began walking south on Amsterdam Avenue. After taking about 10 steps, he slipped and fell, suffering a fracture of the left ankle. The building in front of which plaintiff fell housed a family care facility and was owned by the City of New York.

The United States Weather Bureau's observatory in Central Park had recorded a total of 17.7 inches of snowfall on February 6 and 7, eight days before the accident. No further precipitation occurred until February 13, when 1.1 inches of snow fell, which was followed by 3.1 inches on February 14, the day before the accident. The weather report also indicated that the temperature during the period from February 6 to February 15 hovered between 16 and 36 degrees. On February 14, the low temperature was 26 degrees and the high 33 degrees, while on February 15, the low was 18 and the high 34 degrees.

Plaintiff testified that he did not observe any snow in the middle of the street or piles of snow at the corner when he exited from the bus. He described the ice, which he could not avoid and which completely covered the sidewalk from building line to curb, as 1 or 2 inches thick, and hard, slippery, bumpy and uneven. Plaintiff was wearing shoes, not boots, at the time.

The city's only witness, a Sanitation Department district superintendent, related the snow removal procedures for the Manhattan district that included 145th Street and Amsterdam Avenue. Considered a primary street, Amsterdam Avenue receives a high priority for snow removal. The Department's records for the period from February 6 to February 14, 1978 showed that the intersection in question had been plowed, cleared and salted. In answer to a question as to whether he could tell from the records if the sidewalk near the bus stop had been plowed or cleared, the witness stated, "Well, I would have to say, looking at the records, I would say yes", but he was unable to point to anything in particular in the records to verify that it had been done. In so responding, he was relying on records showing that, on February 10 and 13, front-end loaders, which have maneuverability and are used, *inter alia,*

to clear sidewalks, were being employed in the area encompassing the intersection of 145th Street and Amsterdam Avenue.

At the close of the evidence, the city renewed its motion to dismiss the complaint on the ground that plaintiff had failed to make out a prima facie case, and on the additional ground that the testimony indicated that it had responded reasonably in clearing away the snow after the various storms preceding plaintiff's fall. The city also noted that plaintiff had not offered any evidence of negligence on its part as the owner of the abutting premises. The court granted the city's motion, stating, *inter alia,* that "[t]here was no testimony regarding the condition of the sidewalk on the days prior to the accident in question, the accident occurring on February 15, 1978." The court also noted that, in view of the fact that an additional 3.1 inches of snow had fallen on the day before the accident, "there was no distinction and no testimony regarding any old ice that may have been there and any new ice which allegedly formed at the time of the snowfall on February 14th." Based on that finding, and citing *Valentine v City of New York* (86 AD2d 381, *affd* 57 NY2d 932), the court found that "the City had to be given a reasonable time in which to remove that snow." This appeal followed. We reverse.

"A motion for judgment at the close of all the evidence is substantially equivalent to one for a directed verdict made at that point". *(Lipsius v White,* 91 AD2d 271, 276; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4401.01.) The test to be applied in considering such a motion "is not founded upon a weighing of the evidence, but rather, in taking the case from the jury, the trial court must find 'that by no rational process could the trier of the facts base a finding in favor of the [plaintiff] upon the evidence * * * presented' " *(Lipsius v White, supra,* at 276-277, quoting *Blum v Fresh Grown Preserve Corp.,* 292 NY 241, 245). In determining whether a prima facie case has been established, the plaintiff's evidence must not only be accepted as true, but accorded the benefit of every favorable inference that may be drawn therefrom. *(See, Parvi v City of Kingston,* 41 NY2d 553, 554; *Sagorsky v Malyon,* 307 NY 584, 586; *Lipsius v White, supra,* 91 AD2d, at 277; *Prince v City of New York,* 21 AD2d 668.) As long as the record yields a view of the evidence upon which a jury could rationally find for the plaintiff, he is entitled to have the jury pass upon the case, and the complaint may not be dismissed. *(See, Stein v Palisi,*

308 NY 293, 296; *see also, Dillon v Rockaway Beach Hosp. & Dispensary,* 284 NY 176, 179.)

Of course, the mere happening of an accident does not constitute negligence. *(Ostrowski v Board of Educ.,* 31 AD2d 571, 572; *see also, Abbott v St. Luke's Mem. Hosp. Center,* 38 AD2d 176, 179.)* In cases where the maintenance of a dangerous condition is alleged, the plaintiff has the burden of establishing such condition and further that the defendant had notice thereof and a reasonable opportunity to correct it or warn of its existence. *(Lewis v Metropolitan Transp. Auth.,* 99 AD2d 246, 249, *affd* 64 NY2d 670.)* And, as we noted in *Valentine,* "a municipality is liable for failure to clear snow and ice from its sidewalks only if 'a dangerous condition was created and permitted to exist for such a period as would reasonably have afforded an opportunity to remedy the condition' " *(supra,* 86 AD2d, at 383-384, quoting *Schlausky v City of New York,* 41 AD2d 156, 158).

Plaintiff's case was premised on the claim that the city had negligently permitted the accumulation of snow and ice on the sidewalk where he fell. The standard of care imposed upon a municipality in such cases has been stated as follows: "The rule is well established that a municipality is not liable in negligence for injuries sustained by a pedestrian who slips and falls on an icy sidewalk unless a reasonable time has elapsed between the end of the storm giving rise to the icy condition and the occurrence of the accident * * * A reasonable time is that period within which the municipality should have taken notice of the icy condition and, in the exercise of reasonable care, remedied it by clearing the sidewalk or otherwise eliminating the danger." *(Valentine v City of New York, supra,* 86 AD2d, at 383.)

A rough, hard, bumpy and uneven one- to two-inch icy condition, such as plaintiff claims existed on the sidewalk where he fell, constitutes an unusual and dangerous condition. *(See, Williams v City of New York,* 214 NY 259, 262; *Prince v City of New York,* 21 AD2d 668, *supra; Smith v City of New York,* 282 App Div 495, 496, *affd* 307 NY 843.)* The testimony of the city's witness that, as a matter of policy, the sidewalks at bus stops in the vicinity of 145th Street and Amsterdam Avenue were manually cleared of snow and ice before February 15, 1978 was in sharp conflict with plaintiff's testimony and creates, at most, an issue of fact. Thus, in assessing the sufficiency of plaintiff's case, the issue is, as the trial court noted, whether he met his burden of establishing that the city

failed to act within a reasonable time to clear the icy condition on the sidewalk.

We note initially that the jury could have reasonably inferred from plaintiff's testimony that the ice had existed for a period of at least seven days, that is, since the 17.7 inch, February 6 and 7 snowfall, a storm described by the city's witness as "a very severe blizzard". Evidence was offered that the average temperatures between February 7 and 15 never exceeded 33 degrees, so that any ice which had formed was not likely to have melted during that period. As noted already, plaintiff had testified that the one- to two-inch ice was hard, slippery, bumpy and uneven and that it covered the entire sidewalk. Thus, the jury would not have been speculating in finding that the icy condition had not developed solely as a result of the snowfall on February 14, the day before the accident, or the 1.1-inch fall on February 13.

In fact, plaintiff testified that snow had not accumulated from the light fall the day before the accident. That the weather bureau recorded 3.1 inches of precipitation on February 14 creates a question of fact, but does not render plaintiff's testimony incredible as a matter of law. Indeed, as plaintiff argues, the conflict between his testimony and the weather report may well be illusory. The accumulation measurements for New York City are taken at the Central Park observatory. While the observatory recorded 3.1 inches of precipitation, other parts of the city may have experienced less accumulation, particularly those areas where far more warmth is generated by a concentration of heated buildings and vehicular and pedestrian traffic.[1]

Thus, this case is distinguishable from *Bernstein v City of New York* (69 NY2d 1020), where the jury was asked to determine whether a sheet of ice two feet long, six to seven inches wide and a half-inch thick, resulted from a .4-inch snowfall six days earlier which left, at most, only traces, and was followed by an 8- to 10-inch snowfall within 48 hours of the accident. The Court of Appeals held that the record was barren of any evidence from which the jury could rationally conclude that the ice patch was caused by the earlier rather than later precipitation.

Likewise, in *Valentine,* upon which the trial court relied,

---

1. Although the observatory recorded 3.1 inches of snowfall on February 14, the weather report indicates that the additional ground accumulation in Central Park amounted only to two inches.

the principal issue was whether "the interval of some 30 hours between the storm's cessation and plaintiff's fall was insufficient, as a matter of law, to charge the city with the duty of clearing the sidewalk where plaintiff fell" *(supra,* 86 AD2d, at 384). We held, on the basis of certain uncontroverted facts, that no such duty was imposed after the lapse of so short a period of time. There, the city had experienced the second worst ice storm in the preceding 50 years; the temperature in the 30 hours preceding the storm never rose above freezing; the accident occurred in front of a private residence on a tertiary, residential street in a relatively remote part of The Bronx, which was not close to any intersection or crosswalk.

As was noted in *Yonki v City of New York* (276 App Div 407, 410, *appeal dismissed* 303 NY 852), "There is no formula for determining liability on the basis of any ratio between the number of inches of snowfall and the time elapsed before the happening of the accident and, ordinarily * * * these factors, as well as all the other conditions, constitute a jury question." *(See also, Galvano v City of New York,* 285 NY 818; *Pfeffer v City of New York,* 25 AD2d 889; *Prince v City of New York,* 21 AD2d 668, *supra.)* In *Smith v City of New York* (282 App Div 495, 496, *supra),* this court, in considering a time lapse similar to the one at issue, wrote: "The passage of almost six days, the rough and ridgy condition of the snow and ice and the prominence of the thoroughfare would seem to be sufficient to create an issue of fact as to the negligence of the municipality in failing to clean the sidewalk."

Another significant factor distinguishing *Valentine (supra)* is that here the city was the owner of the building abutting the sidewalk where the accident occurred and, as such, it also had a duty to remove the ice thereon. *(See,* Administrative Code of City of New York § 16-123, formerly § 755[3]-2.0.)[2] Thus, it did not have the normal luxury of waiting a reasonable time for the property owner to clear away the ice. *(See, Casal v City of New York,* 190 Misc 605, *affd* 274 App Div 1034; 5C Warren, New York Negligence, Snow, Ice, Sleet, § 4.15, at 1214 [3d ed]; *cf., Hawkins v Mayor of City of N. Y.,* 54 App Div 258, 261.)

Although plaintiff's evidence was sparse as to the length of

---

2. Section 16-123 of the Administrative Code of the City of New York, in pertinent part, provides, "Every owner * * * having charge of any building * * * in the city, abutting upon any street where the sidewalk is paved, shall, within four hours after the snow ceases to fall * * * remove the snow or ice".

time the icy condition which caused him to fall had existed, the issue should, nevertheless, have gone to the jury. *(See, Laufer v City of New York,* 33 AD2d 1038.)

Accordingly, the judgment of the Supreme Court, New York County (George Bundy Smith, J.), entered August 22, 1986, dismissing the complaint at the close of the evidence should be reversed, on the law, and the matter remanded for a new trial, without costs or disbursements.

SANDLER, J. P., ROSS, MILONAS and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, New York County, entered on August 22, 1986, unanimously reversed, on the law, and the matter remanded for a new trial, without costs and without disbursements.