■ ROBERT KRAUSE et al., Appellants, v CITY OF NEW YORK, Respondent.—Judgment of the Supreme Court, Bronx County (Diane A. Lebedeff, J.), entered July 14, 1988, which, following a jury verdict in favor of plaintiffs Robert Krause and Sylvia Krause on the question of liability, dismissed the complaint upon a directed verdict, is reversed on the law and the verdict reinstated, without costs or disbursements.

Plaintiff Robert Krause was injured when upon getting out of his automobile parked in Debs Place Circle at Co-op City, Bronx County, and taking 1 or 2 steps into the roadway, he slipped and fell on a patch of ice approximately 3 feet by 2½ feet in size. As Mr. Krause slipped, the wind caused the door of his vehicle to blow into him. The accident occurred on January 5, 1985 at about 2:30 P.M. Plaintiff Sylvia Krause, the wife of Robert Krause, discovered her husband lying on the ground.

Mr. and Mrs. Krause, who live in Debs Place Circle, testified to having seen the patch of ice on which Mr. Krause slipped

in the same spot on several occasions since December 27, 1984 when some five inches of snow had fallen. Both plaintiffs testified further that it had snowed lightly on the evening of January 4, stopping by the early morning of January 5. Climatological data collected at Central Park Observatory, which was introduced into evidence by plaintiffs, reflected precipitation of snow and/or ice pellets of 4.8 inches on December 27 and of 2.0 inches on January 5.

However, a meteorologist called by the defendant testified that, according to monthly summaries of local climatological data for La Guardia Airport station, by December 29 there was no snow on the ground due to unseasonably high temperatures following the December 27 snowstorm, and that temperatures had remained above freezing and were as high as 68 degrees between December 28 and January 2. According to the defense meteorologist there was freezing rain with ice pellets on the night of January 4, ending in the early morning of January 5 and, as a result, two inches of snow were on the ground at 7:00 A.M. on January 5. He indicated that freezing rain will cause a layer of ice on all exposed surfaces and that if the rain turns to snow, the snow will pile up on top of the ice layer.

A New York City Department of Sanitation employee, testifying for the defendant, stated that salt was sprayed at Debs Place, at distances of from 10 to 15 feet, at three times relevant herein: between 4:00 P.M. and midnight on December 27, 1984; between midnight of December 27 and 8:00 A.M. of December 28; and between midnight of January 4 and 8:00 A.M. January 5. No plowing of the area occurred between December 27 and January 5.

The trial court, acting on the assumption that Mr. Krause had slipped on a residue of the January 4-5 snowfall, found that the time period between the January 4-5 snowfall and the accident, the relatively mild nature of the storm and evidence that the area had been salted, failed to establish negligence on the part of the city as a matter of law. Relying on *Valentine v City of New York* (86 AD2d 381 [1st Dept 1982], *affd* 57 NY2d 932 [1982]), the trial court granted a motion by the city to set aside the jury's verdict for plaintiffs on the question of liability.

We reverse, upon our holding in *Candelier v City of New York* (129 AD2d 145 [1st Dept 1987]).

In *Valentine v City of New York (supra),* the trial evidence established that a severe ice storm, the second worst in 50

years, had deposited 2 to 3 inches of an "icy mass" on New York City, ending some 30 hours prior to the plaintiff's accident. The Court of Appeals unanimously affirmed this court's holding that as a matter of law the city could not be held to have been negligent in failing to clear the sidewalk in a remote residential area of the city unless a reasonable time had elapsed between the end of the snowfall and the accident, thereby enabling the city in the exercise of reasonable care to have remedied the icy condition.

Subsequently, in *Candelier (supra)*, where the record revealed conflicting evidence as to whether the ice on which plaintiff had fallen was the result of a snowstorm occurring eight days prior to the accident or was caused by a snowfall the day before, we reversed the trial court's dismissal of the complaint at the close of the evidence and ordered a new trial.

As we stated in *Candelier (supra,* at 148, quoting *Valentine v City of New York,* 86 AD2d, *supra,* at 383): " 'The rule is well established that a municipality is not liable in negligence for injuries sustained by a pedestrian who slips and falls on an icy sidewalk [or street] unless a reasonable time has elapsed between the end of the storm giving rise to the icy condition and the occurrence of the accident * * * A reasonable time is that period within which the municipality should have taken notice of the icy condition and, in the exercise of reasonable care, remedied it by clearing the sidewalk [street] or otherwise eliminating the danger.' "

Here, plaintiffs not only claimed that Mr. Krause had fallen on ice which was the residue of a snowstorm occurring some nine days earlier and that the city in the exercise of reasonable care should have remedied that icy condition, but claimed that the city was further negligent in its attempts to clear the street following both that snowstorm and the one occurring the night before the accident.

There was conflicting testimony at trial concerning whether the ice upon which Mr. Krause had fallen was the residue of the December 27 storm, one of the central questions of fact herein. As we pointed out in *Candelier (supra,* at 149), the conflict between plaintiffs' testimony and weather reports (in this case as to whether there were intervening mild temperatures on the days following December 27 which melted the snow) does not make such testimony incredible as a matter of law. Additionally, the reported temperatures and accumulations were measured at the Central Park Observatory and at La Guardia Airport and there was evidence that temperature conditions may have varied in other parts of the city. Thus, a

jury could have reasonably concluded that the icy condition had not developed solely as a result of the January 4-5 snow and that Mr. Krause had slipped on a residue of the December 27 snowstorm. Moreover, based upon the evidence presented the jury reasonably could have found that the city was negligent in its efforts to clean up the area between December 27 and January 5. Concur—Kupferman, J. P., Ross, Ellerin and Smith, JJ.

Carro, J., dissents in a memorandum as follows: I would affirm the judgment dismissing the complaints herein.

In this case, the evidence was insufficient, as a matter of law, to support a claim that the ice patch upon which plaintiff-appellant Robert Krause slipped on January 5, 1985 was residue of the December 27, 1984, rather than the January 4-5, 1985, snowfall. The evidence at trial established that on December 27, 4.8 inches of snow fell and 1.5 inches of snow fell on January 4-5, 1985. However, both parties introduced into evidence documents which make it clear that in the intervening days, there was unseasonably mild weather, with temperatures reaching into the upper fifties and sixties. Indeed, the local climatological data monthly summaries put into evidence by *plaintiffs* indicate that after the temperatures rose to 56 degrees Fahrenheit on December 28, it never fell below the freezing level until January 3, *six days later.* These records, as well as those introduced by defendant-respondent City of New York, constitute prima facie evidence of the facts therein contained. *(Bretsch v Plate,* 82 App Div 399, 403 [2d Dept 1903]; *Schleede v State of New York,* 5 Misc 2d 785, 786 [Ct Cl 1957].)

The only conclusion which may be drawn from this evidence is that any accumulation of snow from the 4.8-inch snowfall of December 27 had melted long before January 3, 1985. Thus, the testimony of the Krauses that there had been an ice patch 2 by 3 feet in the same place during this period of time is unquestionably rebutted by the documents, as well as by testimony of the defense witness, meteorologist Walter Zeltman. *(Cf., Fuller v State of New York,* 122 AD2d 551, 552 [4th Dept 1986] [claimant's witnesses each testified, without rebuttal by State, that for three weeks prior to claimant's fall, icy conditions had persisted on campus sidewalks].)

The reliance by the majority upon *Candelier v City of New York* (129 AD2d 145) is misplaced here. First, while in *Candelier* we did not hold plaintiff's testimony, which was contradictory to weather reports, to be incredible as a matter of law

(129 AD2d, *supra,* at 149), the issue in conflict concerned how much precipitation had accumulated during a later snowfall. However, the issue herein is whether nearly a week of documented balmy weather would melt 4.8 inches of snow. Furthermore, although the majority contends that the temperatures and accumulations may have varied in Co-op City, where plaintiff Robert Krause fell, and locations other than the Central Park Observatory and La Guardia Airport, where the statistics were measured, it strains the imagination to consider the possibility of a 20-to-30-degree variance. Indeed, the expert testimony was that the temperatures variance would have been a mere 0 to 3 degrees, so that the temperature in Co-op City would have been consistently above freezing during the time period discussed. Therefore, no jury could reasonably conclude that the ice patch Robert Krause slipped on developed, in any part, as a result of the residue from the December 27 snowstorm. The verdict to the contrary could only have resulted from mere speculation, sympathy or guesswork and was, therefore, appropriately set aside as to this aspect of the case. *(See, Bernstein v City of New York,* 69 NY2d 1020, 1022 [1987].)

Having determined that the first snowstorm was irrelevant to the accident herein, the next question is whether the city was negligent as to the January 4-5 snowfall. As this court has held, in *Valentine v City of New York* (86 AD2d 381, 383 [1st Dept 1982], *affd* 57 NY2d 932 [1982]), the city "is not liable in negligence for injuries sustained by a pedestrian who slips and falls on an icy sidewalk unless a reasonable time has elapsed between the end of the storm giving rise to the icy condition and the occurrence of the accident."

The January 4-5 snowfall ended between 6:00 and 7:00 A.M.; the city salted the area sometime between midnight of January 4 and 8:00 A.M. January 5. We are aware that "no formula exists for determining liability on the basis of the time lapse between the end of the storm and the accident" *(Valentine v City of New York,* 86 AD2d, *supra,* at 388); however, it is obvious that the sparse amount of snow, the few hours between the 1.5-inch snowfall and the accident, and the fact that the city made prompt efforts to salt the area, establish that the city was not remiss in its duty. Nor may liability be found by the mere showing of an isolated patch of ice some hours after these efforts were made. *(See, Bonfrisco v Marlib Corp.,* 30 AD2d 655 [1st Dept 1968], *affd* 24 AD2d 817.)

Thus, because the jury made a finding of liability in this case which is not supported by the facts, the IAS court

correctly set aside the verdict and dismissed the complaints, and we should not disturb the judgment.