■ FLORENCE HICKEY, Respondent-Appellant, v MANHATTAN & BRONX SURFACE TRANSIT OPERATING AUTHORITY, Appellant-Respondent, and CITY OF NEW YORK, Respondent.—Judgment, Supreme Court, Bronx County (Howard R. Silver, J.), entered on or about June 23, 1989, which, *inter alia,* following a jury verdict on the question of liability in favor of plaintiff against defendants and apportioning liability 30% against defendant Manhattan & Bronx Surface Transit Operating Authority (MABSTOA) and 70% against defendant the City of New York, set aside the verdict against the City of New York and found in favor of plaintiff against defendant MABSTOA, unanimously modified, on the law and the facts, the verdict against the City of New York reinstated and, as modified, affirmed, without costs.

On February 11, 1987, plaintiff Florence Hickey, who was then 75 years of age, alighted from a bus, owned and operated by defendant MABSTOA, at the intersection of White Plains Road and Pelham Parkway. Parked buses blocked the designated bus stop, a meridian approximately 100 feet in length between east and westbound traffic on Pelham Parkway. Plaintiff, therefore, stepped off the bus in the roadway and was compelled to squeeze herself between parked buses in order to reach the meridian sidewalk. She testified that the roadway was covered with ice and that ice also was "packed" against the curb, causing her to slip continuously as she made her way toward the sidewalk. Plaintiff testified that she managed to walk a few steps on the sidewalk, which was also covered with ice, before falling and sustaining injuries.

The action was tried as to liability only, with the jury rendering a verdict against both defendants MABSTOA and the City of New York and apportioning liability between them. The trial court set aside the verdict against the City of New York, finding no basis for the jury's determination that plaintiff fell upon ice which was the result of a storm occurring four days prior to the accident rather than upon snow

which was falling at the time of the accident. We reinstate the verdict against the City of New York.

Initially, we observe that while plaintiff testified that the accident happened at 2:00 P.M., she also testified that an emergency medical services (EMS) ambulance responded within minutes of her fall. The EMS records which were introduced at trial indicated that the ambulance arrived at about 4:00 P.M. While there was evidence, established by climatological reports, that a snowstorm began at approximately 2:00 P.M. and that accumulations of 1.2 and 1.7 inches were reported at 4:00 P.M. at the Central Park Observatory and La Guardia Airport, plaintiff testified that at the location of the accident, there was only an insignificant dusting of "new" snow. Given plaintiff's testimony on this score, which was not otherwise challenged, a question of fact existed as to whether the newly fallen snow was or was not a proximate cause of the accident. *(Krause v City of New York,* 152 AD2d 473 [1st Dept 1989]; *Candelier v City of New York,* 129 AD2d 145 [1st Dept 1987].)* Indeed, in view of the evidence that the snowstorm of February 6-7 deposited approximately four inches of snow and that the Department of Sanitation had cleared only the corners of the meridian and the immediate area of the bus shelter rather than the entire meridian sidewalk, the jury could have concluded that the ice on which plaintiff fell was a result of the earlier snowstorm.

Further, the evidence established that defendant MABSTOA breached its duty to stop at a place where plaintiff could safely disembark. *(Miller v Fernan,* 73 NY2d 844 [1988].)* Nor is MABSTOA absolved of liability because plaintiff reached the sidewalk before she fell. The entire meridian was a designated bus stop, and the jury could have concluded that MABSTOA was negligent in discharging plaintiff at a location where she was forced to tread a dangerous path, rather than in proximity to the corner or the bus shelter, where the snow from the February 6-7 storm had been cleared.

We have considered the remaining arguments and find them to be without merit. Concur—Kupferman, J. P., Ross, Rosenberger, Kassal and Smith, JJ.