■ ANNIE FERGUSON, Respondent-Appellant, v CITY OF NEW YORK, Appellant-Respondent. [607 NYS2d 939] —Judgment, Supreme Court, Bronx County (Hansel McGee, J.), entered June 24, 1992, after a jury trial finding the defendant 50% liable for the plaintiff's injury and awarding her $2,000,000 plus

medical expenses and interest, unanimously reversed, on the law and the facts, the judgment is vacated and the matter is remitted for a new trial on the issue of damages only, without costs.

The plaintiff alleged that the City negligently permitted ice and snow to accumulate on a sidewalk on East 165th Street which caused her to fall at approximately 7:00 A.M. on February 8, 1985. She maintained that the City failed to remedy the icy conditions which existed on the sidewalk for a week following a storm and failed to clear the area following a second snowstorm which ended approximately 48 hours before her accident. The jury found both the City and the plaintiff negligent, apportioning liability equally, and awarded the plaintiff $2,000,000. While we find that the verdict as to liability was supported by sufficient evidence, a new trial is required as to the issue of damages.

The testimony and evidence offered by the plaintiff's meteorologist established that a total of four inches of snow and ice pellets fell on February 1 and 2, 1985 and that the temperature remained below freezing from then up to the time of the accident on February 8th, making conditions icy. By February 5th, the snow on the ground had been compacted to two inches but another snowfall on that day and the following day left an additional five inches of snow. Climatological charts indicated that any measurable precipitation ended by 7:00 A.M. on February 6, 1985. Traces of precipitation then fell until 7:00 A.M. on February 7th.

It is undisputed that the sidewalk where the plaintiff fell had not been salted, sanded or shoveled the entire week. However, the defendant contends that since it did not have sufficient time to clear the sidewalk after the second snowfall and the plaintiff failed to establish that her fall resulted from ice which developed from the first snowfall, it was not liable for the plaintiff's injuries.

"[A] municipality is liable for failure to clear snow and ice from its sidewalks only if 'a dangerous condition was created and permitted to exist for such a period as would reasonably have afforded an opportunity to remedy the condition' " (*Valentine v City of New York,* 86 AD2d 381, 383-384, *affd* 57 NY2d 932, quoting *Schlausky v City of New York,* 41 AD2d 156, 158; *and see, Williams v City of New York,* 214 NY 259, 264; *Candelier v City of New York,* 129 AD2d 145, 148). " 'There is no formula for determining liability on the basis of any ratio between the number of inches of snowfall and the

time elapsed before the happening of the accident and, ordinarily * * * these factors, as well as all the other conditions, constitute a jury question' " *(Candelier v City of New York, supra,* at 150, quoting *Yonki v City of New York,* 276 App Div 407, 410, *appeal dismissed* 303 NY 852; *see also, Gonzalez v City of New York,* 148 AD2d 668, 670, *lv denied* 74 NY2d 608; *Morgen v City of New York,* 110 AD2d 501).

The record reveals that the sidewalk where the plaintiff fell was covered with accumulations of ice and snow and had been left unattended for a week prior to the accident, despite the City's presence in the area to clear the streets. The unsalted, unshoveled area extended from the end of the plaintiff's building, the area in front of which had been cleared, to the corner of the street, and from the building to the curb. The plaintiff's expert testified to the amount of snowfall in the area during the time periods in question and to the effect of the freezing temperatures on the snow, which created icy conditions. The last significant snowfall ended some forty-eight hours before the accident. Although the City had dispatched two different vehicles to plow the street where the accident occurred on February 6, 1985 and three different vehicles on February 7th, it did nothing to clear the large area of the sidewalk covered with ice and snow.

Based on the evidence presented at trial, we do not find that there was "simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury" *(Cohen v Hallmark Cards,* 45 NY2d 493, 499). The jury rationally concluded that an unusual and dangerous condition existed on the sidewalk where the plaintiff fell and that the City failed to take measures to correct the condition despite having had a reasonable opportunity to do so *(see, Candelier v City of New York, supra; cf., Saez v City of New York,* 82 AD2d 782).

Moreover, rather than speculating, as the defendant maintains, we find that there was ample evidence from which the jury could conclude that the plaintiff's fall was caused by the ice which had developed from the first storm *(see, Krause v City of New York,* 152 AD2d 473, *lv denied* 76 NY2d 714; *Candelier v City of New York, supra; cf., Bernstein v City of New York,* 69 NY2d 1020). The meteorologist testified that both ice and snow fell during the first storm and that subsequent temperatures below freezing did not allow the ice to melt. He added that the snow from the second storm was fluffy. The plaintiff testified that she stepped through fresh snow on top of ice when she fell. The ambulance attendant

and a friend of the plaintiff who found her after she fell also stated that she was lying on ice when she was discovered.

We agree with the parties, however, that a new trial is necessary with respect to the issue of damages. The jury initially returned a verdict finding both the plaintiff and the City negligent and awarded the plaintiff $1,000,000 in damages. On the special verdict sheet, the jury was instructed to state the total amount to be awarded to the plaintiff, and then to state separately, without considering medical expenses, the amount to be awarded for past pain and suffering, for future pain and suffering and for home care. No provision was made for loss of earnings. The jury allocated $500,000 for past pain and suffering, but awarded nothing for future pain and suffering or home care, leaving $500,000 of the award unaccounted for.

When the jury was polled, it was determined that they were confused by the verdict sheet and the court's instructions, and that they had intended to award the plaintiff a total of $1,000,000, after the reduction for comparative negligence. The court instructed the jury by stating that "we don't want you at this point to make a deduction, we want to know what you want to award the defendant [sic]", and resubmitted the case to them. The jury then returned with a $2,000,000 verdict, again allocating $500,000 for past pain and suffering and nothing for future pain and suffering or home care. The remaining $1,500,000 of the award was unaccounted for.

The trial court failed to clarify for the jury that it would calculate the amounts resulting from the apportionment of liability (PJI 2:36.1 [Supp]) and failed to explain that the amounts on the special verdict sheet must add up to the total verdict (see, CPLR 4111 [f]). Since there was substantial juror confusion in arriving at the precise amount of damages to be awarded the plaintiff, a new trial solely on the issue of damages, to which the present apportionment of liability shall be applied, is required (Moore v Bohlsen Assocs., 141 AD2d 468; and see, Scaduto v Suarez, 150 AD2d 545; Wingate v Long Is. R. R., 95 AD2d 671; Pache v Boehm, 60 AD2d 867). Concur —Rosenberger, J. P., Wallach, Kupferman, Ross and Tom, JJ.