■ LIGE SIMMONS et al., Appellants, v METROPOLITAN LIFE INSURANCE COMPANY, Respondent and Third-Party Plaintiff-Respondent. NATIONAL CLEANING CONTRACTORS DIVISION OF KINNEY NATIONAL SERVICES, INC., Third-Party Defendant-Respondent-Appellant. [615 NYS2d 395] —Judgment, Supreme Court, New York County (Loren Brown, J.), entered November 16, 1992, upon a jury verdict in favor of the plaintiffs against defendant and third-party plaintiff Metropolitan Life Insurance Company and which, *inter alia,* directed a verdict in favor of Metropolitan Life Insurance Company against third-party defendant National Cleaning Contractors, reversed on the law, the judgment vacated and the complaint hereby dismissed, without costs. The Clerk is directed to enter judgment in favor of third-party defendant National Cleaning Contractors dismissing the third-party complaint.

Plaintiff, Lige Simmons, was injured at 3:00 A.M. on December 23, 1989, in front of 447 East 14th Street, also known as the Peter Cooper Village/Stuyvesant Town complex. According to the plaintiffs' witnesses, Mr. Simmons slipped on an ice patch located somewhere on the path leading to the entrance of the building. The complex is owned and operated by Metropolitan Life Insurance Company (Met Life). Pursuant to a contract with Met Life, National Cleaning Contractors was

responsible for the maintenance and cleaning of the complex grounds including snow removal when necessary.

There was no evidence presented at trial that the defendant had actual or constructive notice of the icy condition of the sidewalk in question. Generally, to constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit the defendant's employees to discover and remedy it (*Gordon v American Museum of Natural History,* 67 NY2d 836, 837). In a situation involving snow and ice, a property owner may not be held liable unless he or she has notice of the defect, or, in the exercise of due care, should have had notice, and the owner has had a reasonably sufficient time from the end of the storm to remedy the condition caused by the elements (*Arcuri v Vitolo,* 196 AD2d 519, 520).

We conclude herein that under the circumstances any condition existing on the date and at the time of this incident was not one from which negligence by the defendant can be reasonably inferred (*see, Drake v Prudential Ins. Co.,* 153 AD2d 924, 925). Concur—Murphy, P. J., Rosenberger and Ross, JJ.

Kupferman, J., dissents and would affirm.

Tom, J., dissents in a memorandum, as follows: I respectfully dissent and would remand this matter to the IAS Court for a new trial as to damages unless plaintiffs Lige and Ivory Simmons and third-party defendant-appellant National Cleaning Contractors Division of Kinney National Services, Inc. ("National") can agree to stipulate to an increased award for past and future pain and suffering, and would otherwise affirm.

On the morning of December 23, 1989, Mr. Simmons, who was 64 years old at the time, allegedly slipped and fell on a patch of ice on a walkway in front of the building where his daughter, Jolley-Lewis, resides.

Plaintiff commenced the underlying personal injury action against defendant Metropolitan Life Insurance Company ("Met Life"), the owner of the housing complex where the subject building is located. Met Life brought a third-party action against National, which was under contract with Met Life to maintain and clean the grounds of the housing complex.

After trial, the jury returned a unanimous verdict finding that defendant Met Life was liable and that its negligence was the sole proximate cause of Mr. Simmons' injuries.

It is well settled that in a snow and ice situation, a property owner may not be held liable unless it has actual notice of the defect or, in the exercise of due care, has had a reasonably sufficient time, from the cessation of the previous storm, to remedy the conditions caused by the elements *(Cerra v Perk Dev.,* 197 AD2d 851; *Jordan v Musinger,* 197 AD2d 889; *Arcuri v Vitolo,* 196 AD2d 519; *Newsome v Cservak,* 130 AD2d 637; *Valentine v City of New York,* 86 AD2d 381, *affd* 57 NY2d 932; *see also, Gordon v American Museum of Natural History,* 67 NY2d 836).

Contrary to the majority's finding of lack of proof, there was ample evidence in this case to support the court's submission of the issues of negligence and notice to the jury and for the jury to find liability against the owner.

In the instant case, Ms. Jolley-Lewis testified that it had snowed approximately two weeks prior to the incident, that snow was on the walkway one week later, and that ice patches remained on the sidewalk in various places. She testified that she had walked around icy spots in the days before the incident. Ms. Jolley-Lewis asserted that no salt or sand had been placed on the sidewalk in front of her building and that she was able to remember the foregoing facts in detail because she was pregnant and forced to proceed in the area with a great deal of caution due to the alleged conditions.

Mrs. Simmons testified that although she did not recall seeing any snow on the morning of December 23, 1989, she did testify that her feet slid a little as she walked toward the building. Mr. Simmons testified that he felt an icy patch after he fell when he attempted to push himself up.

An expert meteorologist called by plaintiffs, a Mr. Barry Grossman, testified, *inter alia,* that the monthly weather report for New York City in December 1989 revealed that it had snowed on 11 different days during that month prior to the date of the incident (with a total accumulation of approximately one inch) and that the highs for the five days immediately preceding the accident were 27, 27, 32, 22 and 18 degrees and the lows were 16, 18, 19, 12 and 8 degrees, respectively. On the date of the incident, the high was 22 degrees and the low was 6 degrees.

National, pursuant to its contract with Met Life, was to clean and maintain the premises and remove snow and ice from the buildings, grounds and public areas. Maintenance records kept by National indicated that the building entrances in the sector in question had been sanded and salted on

December 12, 1989 and December 21, 1989. The testimony of employees of National also revealed that snow, after it fell, was piled upon the lawns adjacent to the walkway.

The jury could reasonably infer that the rise in temperature on December 20th to 32 degrees, and the sand and salt spread by National on the 12th and 21st could have caused a thaw of the remaining snow patches, and that the sudden drop in temperature on December 22nd and 23rd could have re-frozen certain patches and caused a slippery ice condition. The rise in temperature could have also melted snow on the lawn adjacent to the walkway which could have caused water to flow onto the walkway where it re-froze when the temperature dropped.

Plaintiffs had presented a prima facie case of both constructive notice and negligence sufficient to warrant presentation to a jury (see, Batton v Elghanayan, 43 NY2d 898). The issues as to whether there were ice patches on the walkway in question at the time of the incident and, if there were, whether such conditions existed for a reasonably sufficient time to give defendant notice and to remedy the conditions are issues for jury evaluation.

The assessment and determination of the evidence and credibility of the witnesses are within the province of the jury and should not be disturbed if they could have been reached by any fair interpretation of the evidence.

In Baker v Turner Constr. Co. (200 AD2d 525, 526), we held that: " 'It is well established that, in reviewing a jury verdict for sufficiency, a court must examine the evidence in the light most favorable to the prevailing party * * * and that before the court may find that the verdict is not supported by sufficient evidence, it must "first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial." ' " (Quoting Furia v Mellucci, 163 AD2d 88, lv denied 77 NY2d 803, quoting Cohen v Hallmark Cards, 45 NY2d 493, 499; see also, Candelier v City of New York, 129 AD2d 145, 147.)

Based on the proof presented in this case, I do not find that the jury's verdict of liability against Met Life was not based on a fair interpretation of the evidence, especially in light of the fact that neither defendant Met Life nor third-party defendant National offered sufficient proof to establish that the ice had formed so close in time to the accident that they could not reasonably have been expected to notice and remedy

the condition, nor did they offer evidence to contradict the testimony and evidence offered by plaintiffs' meteorological expert.

I also find merit in plaintiffs' claim that the jury's award of damages was insufficient in that it deviates materially from what would be considered reasonable compensation (CPLR 5501 [c]). Mr. Simmons suffered a severe ankle fracture which required immediate surgery involving the insertion of screws into the ankle and the removal of bone fragments. Mr. Simmons was hospitalized approximately two weeks, spent four months in a cast and on crutches, has permanent impairment of movement and faces the likelihood of future surgery and the onset of injury-related arthritis. Although it is impossible to speculate on the jury's rationale in awarding plaintiff a total sum of $17,000 for past and future pain and suffering out of an award of $42,500 (Paz v City of New York, 185 AD2d 793, 794; Karasz v Ship, 180 AD2d 467, 468), it is clearly inadequate in light of the injuries sustained.

This seems especially so when viewed in the context of some of our recent decisions: Roshwalb v Regency Mar. Corp. (182 AD2d 401, lv denied 80 NY2d 756), in which we affirmed the award of $750,000 for past and future pain and suffering to a 63-year old plaintiff who suffered a comminuted fracture of the elbow; Radwaner v USTA Natl. Tennis Ctr. (189 AD2d 605), in which we left undisturbed a $183,132.50 award for past and future pain and suffering to a 60-year old plaintiff who suffered a dislocated right shoulder and torn muscle tendon; and Rivera v New York City Tr. Auth. (201 AD2d 378), in which we affirmed an award of $393,860 for past and future pain and suffering to a 55-year old plaintiff who sustained a closed, nondisplaced comminuted fracture of the left patella with resulting arthritis.

I would leave the awards for loss of consortium and medical expenses undisturbed.