■ BEVERLY GARRICKS, Respondent, v CITY OF NEW YORK, Appellant. [753 NYS2d 54] —Judgment, Supreme Court, Bronx County (Barry Salman, J.), entered June 13, 2001, which, upon a jury verdict as reduced pursuant to plaintiff's stipulation, inter alia, awarded plaintiff $50,000 for past pain and suffering, $250,000 for future pain and suffering, and $7,800 for past lost earnings, affirmed, without costs.

The reasonableness of the City's actions in failing to clear the sidewalk where plaintiff slipped and fell for 24 hours after the City had finished plowing the abutting streets following a 10-inch snowfall was properly left for the jury to determine (*see Murdock v City of New York*, 272 AD2d 249; *Crichton v Pitney, Hardin, Kipp & Szuch*, 255 AD2d 155), and the evidence, fairly considered, permitted the jury to conclude, as it did, that the City had not acted reasonably.

The court's reduction of the jury award for future pain and suffering from $450,000 to $250,000 was appropriate given the nature of plaintiff's injury (*see e.g. Chisholm v Madison Sq. Garden Ctr.*, 289 AD2d 168). The cases cited by plaintiff wherein larger amounts were awarded all involve more serious injuries than those sustained by plaintiff, and in two of the cited cases, the award was for both past and future pain and suffering. Concur—Ellerin, Rubin and Gonzalez, JJ.

Andrias, J.P., and Friedman, J., dissent in a memorandum by Friedman, J., as follows: While walking on a sidewalk along a residential street less than two days after a 10-inch snowfall, plaintiff slipped and fell on hard, thick ice that had formed during the severe cold spell that followed the snowstorm. In holding the City liable for plaintiff's injuries, the majority takes a position inconsistent with prior decisions of both the Court of Appeals and this Court. In *Valentine v City of New York* (57 NY2d 932, *affg* 86 AD2d 381), the Court of Appeals affirmed our dismissal of an action against the City for injuries suffered in a sidewalk slip-and-fall accident that occurred approximately 30 hours after the end of a winter storm. "[A]s a matter of law," the Court of Appeals held, "insufficient time had elapsed after the end of th[e] heavy storm to hold the city liable for failure to clear the sidewalks of snow and ice" (57 NY2d at 933-934). While more time (39 to 45 hours) passed between the end of the storm and the accident at issue here than was the case in *Valentine*, this Court has twice held that a lapse of time *greater* than the lapse in this case was insufficient to create a question of fact as to whether the City was negligent (*see Martinez v Columbia Presbyt. Med. Ctr.*, 238 AD2d 286, 287 [accident occurred 48 hours after storm ended]; *Sing Ping Cheung v City of New York*, 234 AD2d 91 [accident occurred three days after storm ended]). Notably, here, as in *Martinez* and *Cheung*, it is undisputed that the City endured a hard freeze over the days following the storm.*

Contrary to the teaching of *Valentine*, *Martinez* and *Cheung*, the majority's decision essentially makes the City an insurer for all slip-and-fall injuries incurred in the wake of a snowstorm on the City's hundreds of miles of sidewalks. In this regard, I note that the only evidence on which plaintiff relied to prove the City's negligence at trial was the bare fact of the passage of time between the end of the storm and her accident. Other than by reference to this time gap, plaintiff offered no evidence that the City was negligent in responding to this snowstorm,

---

* *Crichton v Pitney, Hardin, Kipp & Szuch* (255 AD2d 155), cited by the majority, is distinguishable in that the accident in that case occurred five days after the winter storm ended. In *Crichton*, we simply held that the five-day period—more than twice as long as the period of less than two days at issue here—was sufficient to create a question of fact as to the reasonableness of the City's snow-clearing efforts. In view of the Court of Appeals' decision in *Valentine*, *Crichton* cannot be read to stand for the proposition that any time gap between the end of a storm and a slip-and-fall accident, no matter how limited, will create a jury issue. To the extent dicta in *Crichton* may be inconsistent with *Valentine*, we are bound to follow *Valentine*, a decision of the Court of Appeals.

nor did she attempt to prove that the City's contingency plans for dealing with such storms lacked a reasonable basis (*see Friedman v State of New York*, 67 NY2d 271, 284-286).

In fact, the uncontradicted trial evidence of the City's snow-clearing efforts shows that the City acted promptly and professionally to address the municipal crisis created by the storm. To reiterate, the storm in question blanketed New York City with more than 10 inches of snow on February 4, 1995. While the snow was still falling, the City's sanitation department began to implement its systematic snow-clearing plan for the most severe category of storms. The plan called for the use of all available equipment and personnel, both regular departmental employees and day laborers. Since municipal resources obviously have limits, the City had no choice but to divide the work into several phases to be performed in order of priority, based on considerations of public safety and traffic volume (*see Valentine*, 86 AD2d at 386-387). Thus, under the City's plan, priority was given to the clearance of highways and major traffic arteries, streets with bus stops, crosswalks, and sidewalks at fire hydrants, bus stops, and entrances to firehouses and hospitals.

The City's efforts were impeded by the hard freeze that occurred on February 5th and 6th, when temperatures plummeted to as low as six degrees; at the time of plaintiff's accident, the temperature was only about 10 degrees. Since the temperature had reached a high of 36 degrees on February 4th, the day of the storm, the subsequent cold spell resulted in the formation of hard ice, which cannot be melted by applying salt at temperatures below 20 degrees. As this Court observed in *Valentine* "[i]ce is even more difficult to remove than snow" (86 AD2d at 385). Given these adverse circumstances, it is unfortunate but not surprising that many sidewalks were still not clear at 9:00 A.M. on Monday, February 6th, when plaintiff slipped on ice on the sidewalk near her home on a residential street in the Bronx. As noted above, the City appropriately gives priority to clearing those highways, streets and walkways that are most vital to public safety or most heavily used, and the sidewalk on which plaintiff fell did not fall into either of those categories.

By no means do I minimize the seriousness of the injuries plaintiff has suffered as a result of this accident. This Court does not have authority, however, to require the City to pay tort damages for plaintiff's injuries in the absence of evidence that her accident resulted from municipal negligence. Whatever merit there may be in the majority's implicit position that

government should act as an insurer in cases of this kind, it is not the role of this Court to make such a policy choice in disregard of applicable authority from the Court of Appeals and our own precedents. I therefore respectfully dissent, and vote to reverse the judgment and dismiss the complaint.