■ Michael Espinell, Appellant, v Edwin N. Dickson et al., Respondents. [869 NYS2d 42]—

Plaintiff slipped and fell on a patch of ice on the sidewalk, at the curb in front of defendants' building at 8:45 A.M. The record establishes that it had rained, snowed and sleeted during the preceding day and night, that any precipitation that could have caused the icy condition, including the freezing drizzle of the early morning hours, had ceased by 6:00 A.M., and that snow flurries fell until approximately 7:00 A.M. The record is devoid of evidence that defendant created or was aware of the icy condition on the sidewalk with sufficient time to correct it, or that the condition existed long enough that defendant should have been aware of its existence. Plaintiff testified at his deposition that prior to falling, he did not see any ice at the site of the accident, nor did he observe any other ice or snow on the ground.

"[I]t is settled that the duty of a landowner to take reasonable measures to remedy a dangerous condition caused by a storm is suspended while the storm is in progress, and does not commence until a reasonable time after the storm has ended" (*Pippo v City of New York*, 43 AD3d 303, 304 [2007]). This Court has further held that "[a] reasonable time is that period within which the [landowner] should have taken notice of the icy condition and, in the exercise of reasonable care, remedied it by clearing the sidewalk or otherwise eliminating the danger" (*Valentine v City of New York*, 86 AD2d 381, 383 [1982], *affd* 57 NY2d 932 [1982]).

As a matter of law, defendants should not be held liable for plaintiff's injuries. As noted, the record shows that defendants lacked actual or constructive notice of the icy condition—due to the fact that the icy condition was not readily visible and to the relatively short, early morning interval between the end of the storm and the accident—and presents no evidence that defendants created the hazard (*see Gordon v American Museum of Natural History*, 67 NY2d 836, 837-838 [1986]; *Garcia v New York City Hous. Auth.*, 183 AD2d 619, 620 [1992]). Although the report filed by the New York City Fire Department emergency medical technician (EMT) who responded to the accident states that the site of the accident was very icy, it does not indicate whether the EMT personally observed such condition, or was merely recounting plaintiff's after-the-fact explanation of the

accident. This case is factually distinguishable from *Powell v MLG Hillside Assoc.* (290 AD2d 345 [2002]). In that case, the landlord had actual notice that the hazard existed, since there was visible snow on the ground, which, approximately an hour after cessation of the storm, he had sought to have the custodian remove, and the interim between the end of the storm and the accident was longer. Concur—Friedman, Nardelli, Williams and Freedman, JJ.

Mazzarelli, J.P., dissents in a memorandum as follows: Plaintiff slipped and fell on a patch of ice in front of defendants' building at 8:45 A.M. on December 15, 2003. Certified meteorological records submitted by plaintiff demonstrated that on the day before the accident approximately five inches of snow fell over a period of seven hours. The snow ended at about 3:00 P.M., before changing to rain for the remainder of that day. Most of the snow and ice melted, but a trace of snow and ice remained at the end of the day on exposed, untreated, undisturbed outdoor surfaces. On the day of the accident, the rain changed to sleet at about 4:00 A.M. and continued until 6:00 A.M. Thereafter, a trace of snow fell, stopping at 7:00 A.M. According to an uncontradicted affidavit submitted by plaintiff's meteorological expert, the ice which caused plaintiff's accident was created by the combination of precipitation that fell during the preceding day and until 6:00 A.M. on December 15.

Defendants moved for summary judgment, arguing that plaintiff could not establish that they had actual or constructive notice of the icy condition in sufficient time to remedy it before the accident. The court agreed, holding that there was "no evidence at all" that defendants either created the icy condition or were aware of it in time to clear it, or that an icy condition had existed for a long enough time that defendants should have been aware of its existence.

There is no question that, under the "storm in progress" doctrine, any duty defendants had to remedy the icy condition existed no earlier than 6:00 A.M., when all precipitation but a trace amount of snow ceased falling. Rather, the question is whether defendants established that, as a matter of law, the two hours and 45 minutes between the end of the storm and the accident did not provide defendants with sufficient opportunity to clean the sidewalk. To decide that question requires a close review of the record facts.

As described above, an appreciable winter storm occurred the day before the accident, and continued until the following morning. The ice on which plaintiff slipped covered approximately four feet of the sidewalk and was "right in front" of defendants'

building. Defendant Edwin N. Dickson lived in an apartment on the second floor of the building and was there on the day of the accident. He acted as his own superintendent and personally handled snow and ice removal. He kept on site several snow shovels and an ice chopper. His practice and procedure around the time of the accident was that when he knew there had been a storm he would look out a window on the first floor of the building, and that he would then clean away snow and sand and salt the area outside the building, including the precise area where plaintiff fell. This practice applied even if a storm occurred overnight; indeed, Mr. Dickson recounted at his deposition that he and his son once went downstairs at 1:00 A.M. to remove accumulated snow and ice. However, he did not recall whether he or his son (who also lived at the building and helped him with snow and ice removal) cleaned any ice or snow on the day of plaintiff's accident.

This Court has held that " '[there] is no formula for determining liability on the basis of any ratio between the number of inches of snowfall and the time elapsed before the happening of the accident and, ordinarily . . . these factors, as well as all the other conditions, constitute a jury question' " (*Valentine v City of New York*, 86 AD2d 381, 386 [1982], *affd* 57 NY2d 932 [1982], quoting *Yonki v City of New York*, 276 App Div 407, 410 [1950]). In both of those cases, the plaintiffs slipped on ice or snow resulting from an historic storm, a 25.8 inch snowfall in *Yonki*, and an ice storm in *Valentine* that was described as the second worst in the preceding 50 years. We determined that in each case the City established that it acted reasonably in deploying its sanitation crews first to clear roadways and areas of heavy pedestrian traffic, and only then to clear sidewalks on secondary and tertiary streets such as those where the accidents occurred. Accordingly, we determined, as a matter of law, that under those circumstances it was not unreasonable for the City not to have remedied the wintry conditions encountered by the plaintiffs even though, in *Yonki*, the accident occurred 60 hours after the cessation of the storm, and, in *Valentine*, 30¼ hours.

However, the facts here are dramatically different from those in *Yonki* and *Valentine*. Indeed, they are much closer to the facts in *Gonzalez v American Oil Co.* (42 AD3d 253 [2007]). In that case, this Court affirmed Supreme Court's holding that issues of fact on the question of constructive notice precluded summary judgment. In *Gonzalez*, the plaintiff slipped on a three-foot-by-six-foot patch of ice which was six feet from the entrance of a gasoline station convenience store. On the day of the accident only a trace amount of snow fell, but none within three

to four hours before the accident. On the preceding day, 2.8 inches of snow had fallen. The defendant generally performed ice and snow removal on an "as needed" basis, but had no records of having performed maintenance around the time in question. This Court held, based on, among other things, the size of the ice patch and the fact that it was transparent, that it had been there for at least three hours before the accident occurred. The Court wrote that

"[i]f the ice was there that long, even if it were transparent, defendants should have discovered it, and would have had they made any reasonable effort to keep the area clear of ice and snow.

"From these facts—the large size of the ice patch, its consistency as well as its close proximity to the store's front door, and defendants' failure to perform any meaningful maintenance—one could reasonably conclude that defendants should have discovered this condition well before plaintiff's fall and remedied it" (42 AD3d at 256).

Here, plaintiff testified that the patch of ice on which he fell covered a four foot area—smaller than the area in *Gonzalez*, but significant enough that an issue of fact exists as to whether defendants should have noticed it.* In addition, as in *Gonzalez*, the ice patch was close in proximity to defendants' building. Moreover, the amount of time which elapsed here is only 15 minutes less than the amount at issue in *Gonzalez*. Also similar to *Gonzalez*, defendants in this case indicated that they would have been able to remedy the icy condition immediately upon becoming aware of it. Indeed, Mr. Dickson testified that his custom when there had been wintry precipitation overnight was to inspect the sidewalk outside the property immediately upon rising in the morning. The majority's observation that constructive notice was absent as a matter of law because of the "short, early morning interval between the end of the storm and the accident," is simply not supported by the record.

This Court has held that two hours is not as a matter of law insufficient time to create a duty to clean ice (*see Powell v MLG Hillside Assoc.*, 290 AD2d 345 [2002]). In *Powell*, this Court stated: "In applying [the 'storm in progress'] rule in derogation of liability, we should be less concerned with what was happening at the very moment of the accident. More relevant is what was happening during the period immediately preceding the ac-

---

* It is unclear from the record whether plaintiff, in describing the ice patch, was referring to its total area or simply the length of sidewalk it occupied. If the latter, the patch could have been closer to the 18-square-foot ice patch in *Gonzalez*.

cident. If only trace amounts fell during the two to three hours prior to plaintiff's accident and defendants' custodian was present, then it is reasonable to ask whether the custodian should have been shoveling the accumulated snow. This record calls for determination by a trier of facts, not a rote application of a rule of law." (290 AD2d at 346; *see Tucciarone v Windsor Owners Corp.*, 306 AD2d 162, 163 [2003] [passage of "several hours" between cessation of storm and accident created issue of fact as to reasonableness of defendant's delay in removing snow].) In this case the record requires a determination by a trier of fact as to whether there was sufficient time to remedy the dangerous condition. Accordingly, I would reverse the motion court's order and reinstate the complaint.