■ ANITA PASCUCCI, Appellant, v BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent. [758 NYS2d 54] —Order, Supreme Court, Bronx County (Stanley Green, J.), entered February 13, 2001, which, in an action by a teacher against the Board of Education for personal injuries sustained when she was assaulted by a student in her class, granted defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated.

Plaintiff, a special education teacher at a junior high school, was injured when she was assaulted by one of the students in her class after breaking up an altercation between that student and another. When the altercation began, as an exchange of verbal abuse, plaintiff buzzed the school secretary over the intercom and requested that security be sent to her classroom right away. The secretary acknowledged that she had received the message. While plaintiff was awaiting the arrival of help, the two students began physically fighting. Plaintiff and a paraprofessional managed to remove one of them from the classroom and plaintiff talked to the other until he seemed calmer. Then plaintiff called again for assistance and again the secretary acknowledged the request.

Plaintiff went to the door of the classroom and scanned the hallway for either the crisis intervention teacher assigned to the adjacent room as security in case of an emergency, or any other teacher who could help, but there was no one available. She continued to await security. Ten or 15 minutes later, plaintiff called the secretary again and reiterated her need for assistance in the classroom. Again the secretary acknowledged the request.

At this point, the student who had been fighting ran up and tackled plaintiff from behind, propelling her into the classroom's heavy metal door. Plaintiff fell to the floor, leaning against the door. The student then banged the door several times against plaintiff's head, neck and back. After he left the classroom in search of the student with whom he had been fighting, some of the other students helped plaintiff to her feet. She looked in vain for the security guard, who was not at his post, and then went to the main office, where she found the school principal, who returned with her to her classroom.

While the general rule is that municipalities may not be held liable for injuries resulting from a simple failure to provide po-

lice protection, there is an exception for a narrow class of cases in which a special relationship exists between the municipal entity and the injured party (*Cuffy v City of New York*, 69 NY2d 255, 260 [1987]). The elements of this special relationship are an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the injured party; knowledge on the part of the agents of the municipality that inaction could lead to harm; direct contact between those agents and the injured party; and the injured party's justifiable reliance on the municipality's affirmative undertaking (*id.*). The motion court held that plaintiff's evidence was insufficient to raise an issue of fact as to whether defendant had assumed a special duty to protect her from assault by a student. The court rejected plaintiff's argument that her calls for security and the secretary's acknowledgment of the calls created a special duty on the ground that the conversations reflect that the secretary made no promises or other representations to plaintiff.

Plaintiff's evidence established that at the start of every school year the teachers attended mandatory workshops and conferences in which they were instructed in procedures to be followed in an emergency arising within the school or their particular classrooms. They also were given a safety manual detailing emergency procedures for all school personnel. As set forth in the manual, the duties and responsibilities of teachers include alerting the principal or assistant principal to "situations imperiling pupil or staff safety" and staying with pupils "continuously during emergency situations." Security procedures for teachers include using the telephone intercom system "to alert office to emergencies" and "expeditiously report[ing] to the principal or to his deputy all incidents or conditions impinging on pupil or staff safety including but not limited to assaults." The duties and responsibilities of the principal and, in his absence, the assistant principal, include "[acting] against those who threaten the safety of the school" and "[summoning] assistance of police as required." The manual states that there are two uniformed security guards on the premises, one posted in the main lobby and the other patrolling halls and stairways, and that they carry walkie-talkies. The duties and responsibilities of the secretarial staff include keeping the walkie-talkie radio operational at all times and alerting the principal or his alternate to "any situation affecting the safety of persons in the building." According to plaintiff, the entire school community knew that there were security officers present who carried walkie-talkies accessible by the school secretaries, and it was understood by all faculty members that, if an emergency

arose in a classroom, the teacher had only to inform the school secretary of the situation via the intercom and the secretary would dispatch security or the school principal to the classroom.

In view of the foregoing, a jury could reasonably find that the school secretary's acknowledgment of plaintiff's request for assistance was an implicit promise to act on plaintiff's behalf. The decision was made by defendant to provide the special emergency service of an intercom connection from the classroom to the main office, where the secretaries who received the calls could communicate instantly with the principal or with the security guards via walkie-talkie (see De Long v County of Erie, 60 NY2d 296, 305 [1983]). The evidence established that the secretaries' function upon receiving an emergency call over the intercom was to dispatch the principal or the security guards to the aid of the caller—as opposed, for instance, to merely keeping a log of emergency calls. The secretary who acknowledged plaintiff's call over the intercom may have made no express promise or other representation, as the motion court found, but neither did she refuse plaintiff's plea for assistance (see id.). " 'The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all' " (Florence v Goldberg, 44 NY2d 189, 196 [1978], quoting Moch Co. v Rensselaer Water Co., 247 NY 160, 167 [1928] [Cardozo, Ch. J.]). Plaintiff thus raised an issue of fact as to whether the secretary's acknowledgment of her call was an implicit promise to summon the requested help, and her complaint should not have been dismissed. Concur—Buckley, P.J., Nardelli, Tom, Mazzarelli and Ellerin, JJ.