(December 23, 2008)

■ Zelinda Antoinette Dinardo, Respondent, v City of New York, Defendant, and Board of Education of the City of New York, Appellant. [871 NYS2d 15]—

The trial court properly denied defendant Board of Education's motion at the close of plaintiff's case for judgment as a matter of law (CPLR 4401). Plaintiff, a special education teacher, was injured when she attempted to protect one of her students from attack by another student with a history of aggressive and disruptive behavior. "A motion for judgment at the close of all the evidence is substantially equivalent to one for a directed verdict made at that point . . . In considering [such] a motion . . . the test to be applied is not founded upon a weighing of the evidence, but rather, in taking the case from the jury, the trial court must find 'that by no rational process could the trier of the facts base a finding in favor of the [plaintiff] upon the evidence . . . presented' " (*Lipsius v White*, 91 AD2d 271,

276-277 [1983], quoting *Blum v Fresh Grown Preserve Corp.*, 292 NY 241, 245 [1944]). "[T]he plaintiff's evidence must not only be accepted as true, but accorded the benefit of every favorable inference that may be drawn therefrom. As long as the record yields a view of the evidence upon which a jury could rationally find for the plaintiff, he is entitled to have the jury pass upon the case, and the complaint may not be dismissed" (*Candelier v City of New York*, 129 AD2d 145, 147 [1987] [citations omitted]). Accepting plaintiff's evidence as true and according her the benefit of every favorable inference that may be drawn therefrom (*see e.g. Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]), a jury could have rationally concluded that a special relationship existed between plaintiff and the Board, where the latter, in initiating a type 3 referral to have the student who later attacked plaintiff transferred from her classroom to another program, assumed an affirmative duty to act on plaintiff's behalf; that the Board, through its agents, had knowledge that inaction could lead to harm; that there was direct contact between those agents and plaintiff; and that plaintiff justifiably relied on the Board's affirmative undertaking (*see Cuffy v City of New York*, 69 NY2d 255, 260 [1987]; *Pascucci v Board of Educ. of City of N.Y.*, 305 AD2d 103, 104 [2003]).

Although no express promise was made to plaintiff by any agents of the Board, there is no requirement that the promise to protect be explicit (*see Bloom v City of New York*, 123 AD2d 594, 595 [1986]). In this regard, we note in particular that plaintiff testified that her supervisor told her to "hang in there because something was being done to have [the student] placed or removed." The dissent posits that plaintiff could not have been lulled into a false sense of security by being told something was being done and by the initiation of a type 3 referral, especially since she knew it could take up to 60 days to process such a referral. The jury, however, had a rational basis for finding that plaintiff justifiably relied on the Board's affirmative undertaking, given the assurances she received from her local administrators. For instance, plaintiff told the principal, the assistant principal and her direct supervisor that the situation was getting more impossible, that she wanted to quit, that it was getting unsafe, and that she was concerned about safety in the classroom; in response she was told that "things were being worked on, things were happening [suggesting an imminent solution], . . . and to hang in there." In addition, while the type 3 referral was pending, the principal intervened by writing a letter to the District 10 supervisor of special education, "urgently requesting an alternative site" for the student.

We reject the Board's argument that plaintiff's claim fails

because it is premised on the Board's alleged negligence in the placement and transfer of a student. This is a function carried out in accordance with educational policy, the responsibility for which lies within the professional judgment and discretion of those charged with the administration of the public schools (*see e.g. Brady v Board of Educ. of City of N.Y.*, 197 AD2d 655 [1993]). The evidence demonstrates that agents of the Board began the process of transferring the offending student out of plaintiff's class, and contrary to the Board's contention, the gravamen of plaintiff's negligence claim was that her supervisor and other school administrators failed to follow through with the transfer request in a timely fashion. Furthermore, the Board's argument that it cannot be held liable because its agents had no knowledge of prior threats or violence committed by the student who attacked plaintiff, or that she feared for her safety, is belied by the evidence that the Board's agents were aware of the student's aggressive tendencies and that plaintiff indeed feared for her safety in the classroom. Concur—Saxe, J.P., Catterson and Acosta, JJ.

McGuire and DeGrasse, JJ., dissent in a memorandum by DeGrasse, J., as follows: I respectfully dissent because the evidence at trial was legally insufficient to establish that defendant Board of Education assumed a special duty to plaintiff. On March 25, 1999, plaintiff, a teacher, was injured while trying to prevent one of her students from striking another. This problem student, 10 years old at the time of the incident, was first assigned to plaintiff's special education classroom in September 1998. In the ensuing months, his behavior became progressively disruptive, marked by aggression toward his classmates. Out of concern for safety, plaintiff approached her supervisors about having him placed in a learning environment more suitable for his behavior pattern. As plaintiff knew, because this was a special education pupil, such a change could only be effected by way of an administrative process known as a type 3 referral. Plaintiff, who had worked on two previous type 3 referrals, also knew that the process began with a written recommendation to the Board's Committee on Special Education. Accordingly, starting in January 1999, on her supervisors' instructions, plaintiff kept anecdotal notes for the purpose of documenting the request. The recommendation, supported by plaintiff's notes, was signed by plaintiff and her supervisor on February 12, 1999. Plaintiff testified that she knew it could take up to 60 days to complete a type 3 referral. She also testified that it was never promised the recommendation would be processed on any specific date. Nor did she assume the referral would be done immediately. Plaintiff testified as follows with respect to her

superiors' response to her inquiries about the status of the recommendation: "I was asked to hang in there because something was being done, but I didn't know exactly what that—something was being done to have [him] placed or removed, but I did not know exactly what." No other representation was proffered as a basis for the claim of a special duty on part of the Board.

"It is well settled that absent a special duty to an injured teacher, liability may not be imposed upon a governmental entity for its breach of a duty owed generally to persons in the school system and members of the public" (*Feder v Board of Educ. of City of N.Y.*, 147 AD2d 526, 526 [1989], *lv denied* 74 NY2d 610 [1989]). As the Court of Appeals noted in *Cuffy v City of New York* (69 NY2d 255, 261 [1987]), "the injured party's reliance is as critical in establishing the existence of a 'special relationship' as is the municipality's voluntary affirmative undertaking of a duty to act. That element provides the essential causative link between the 'special duty' assumed by the municipality and the alleged injury. Indeed, at the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection."

Measured against this standard, plaintiff's proof was legally insufficient to establish reliance. The vague statement that something was being done could not have lulled plaintiff into a false sense of security, particularly because she was acutely aware of this student's presence in the classroom and his disruptive propensity right up to the time of the subject incident. Further, as noted above, plaintiff knew from experience that it could take up to 60 days to process a type 3 referral. The incident occurred 41 days after plaintiff initiated the process by signing the recommendation form. Accordingly, I would reverse and grant the Board's motion for judgment dismissing the complaint pursuant to CPLR 4401.