■ FANTASIA MASSEY, Respondent, v NEWBURGH W. REALTY, INC., Appellant. [923 NYS2d 81]—

Order, Supreme Court, New York County (Joan A. Madden, J.), entered February 3, 2010, which denied defendant's motion for summary judgment, affirmed, without costs.

This action involves injuries allegedly sustained by plaintiff on March 14, 2007 when she slipped and fell on a sheet of ice on the sidewalk in front of defendant's premises, a convenience store in Newburgh, New York. Plaintiff testified that it was not raining or snowing on the date of the accident. At approximately 9:30 P.M., plaintiff's boyfriend, Michael Valerie, drove her to the store. When they reached the store, plaintiff stepped out of the car; she did not recall seeing any ice, salt or sand on the ground where the car was parked. While walking toward the store's entrance, plaintiff slipped and fell.

Plaintiff testified that she felt something slippery under both

her feet, that her right foot slipped out from under her, and she was "just on the floor." While on the ground, plaintiff observed ice underneath her. The ice extended approximately seven to eight feet to her left and approximately two to three feet to her right. At deposition, plaintiff identified the general location of the accident using a black-and-white facsimile image of a photograph of the accident location.[1]

By notice dated April 20, 2009, defendant moved for summary judgment dismissing the complaint, relying upon the certified climatological records and the affidavit of its expert meteorologist, Thomas E. Downs. Downs noted, inter alia, that no snow, sleet, freezing rain or other precipitation had been recorded at any of the three weather stations in the area (i.e., Stewart International Airport, Dutchess County Airport and Orange County Airport) in the seven days prior to the accident; that the only precipitation of any kind in the seven days prior to the accident was light rainfall on March 10th to 11th; that no precipitation was observed after 3:00 A.M. on March 11th, three days prior to the accident; that high temperatures registered in the 50s and 60s in the two days prior to the accident; that at 1:00 A.M. on March 14, 2007, the date of the accident, the three weather stations recorded temperatures of 41 degrees, 39 degrees and 34 degrees, respectively; and that the weather conditions in the days preceding the accident, namely, light rainfall on March 10th to 11th, and mostly sunny skies in the prior week, would have melted any residual snow or ice remaining on the ground by March 12, 2007.

Plaintiff opposed the motion for summary judgment, contending, first, that defendant failed to make a prima facie case. Plaintiff asserted that the affidavit of defendant's expert meteorologist, Thomas E. Downs, was speculative insofar as it did not take into account the relevant testimonial and photographic evidence in the case in concluding that there was no snow or ice on the ground.

Plaintiff asserted, in any event, that she had raised a triable issue of fact. Plaintiff relied on her deposition testimony and af-

---

1. Color and black-and-white copies of the photograph were authenticated by both plaintiff and Valerie. In an affidavit submitted in opposition to the motion for summary judgment, plaintiff averred that the photograph had been taken by Valerie within two hours of the subject accident and "fairly and accurately depict[ed] the ice as it appeared at the time and location of the accident." Defendant alleges that the photograph ought to have been disregarded by the lower court in light of the supposedly conflicting representations by Valerie regarding the provenance of the photograph. This Court ordinarily does not weigh the credibility of affiants on a motion for summary judgment and declines to do so here.

fidavit submitted in opposition to the motion, in which she averred that the ice she had slipped on was "hard, dry and approximately one inch thick."

Plaintiff relied, in addition, on certified meteorological records from the Walden 1ESE weather station which indicated that in the 14 days prior to and including March 14th, the date of the subject accident, the temperature fell below freezing on each and every day.

By order entered February 3, 2010, the court denied defendant's motion for summary judgment, stating that "[i]n light of plaintiff's sworn statements as to the size, thickness and dryness of the ice patch, Valerie's sworn and corroborating eyewitness statements, and the photograph clearly depicting a large, thick patch of ice, this court cannot determine as a matter of law that it would have been impossible for ice to be present on the sidewalk where plaintiff fell." The court found Downs's affidavit not dispositive on the subject of whether it would have been impossible for ice to be present at the time and location of plaintiff's accident. The court noted that defendant's expert did "not conclude that the presence of ice would have been 'impossible' under the [meteorological] circumstances, and does not address specifically whether an area of ice approximately seven feet by three feet, and one inch thick, could be present under such circumstances."

Finally, the court found that defendant had not met its burden as to constructive notice, since it failed to produce an affidavit, deposition testimony, or any other competent proof from an employee of its convenience store.

Summary judgment in a snow or ice case is proper where a defendant demonstrates, through climatological data and expert opinion, that the weather conditions would preclude the existence of snow or ice at the time of the accident (see Perez v Canale, 50 AD3d 437 [2008]). CPLR 4528 provides that "[a]ny record of the observations of the weather taken under the direction of the United States weather bureau, is prima facie evidence of the facts stated."

Defendant argues that the motion court erred in finding that it had not established prima facie entitlement to summary judgment. However, defendant's expert's opinion was arguably speculative insofar as it failed to take into account plaintiff's testimony concerning the nature of the ice, nor did it address plaintiff's photograph showing ice at the accident location (see Neidert v Austin S. Edgar, Inc., 204 AD2d 1030, 1031 [1994] [stating that "(t)he meteorologist's opinion that the weather conditions prevailing in the region could produce areas of black

ice supports only speculation about actual conditions at the accident scene"]).

Further, as noted by the motion court, defendant did not satisfy its burden of establishing lack of constructive notice as a matter of law since it failed to submit an affidavit, deposition testimony or other competent evidence from a store employee establishing that any employees regularly inspected the sidewalk (*see Strange v Colgate Design Corp.*, 6 AD3d 422 [2004]).

Even if we assume that defendant's meteorological data established prima facie entitlement to summary judgment, plaintiff's testimony, together with the meteorological data and photographic evidence of the alleged hazard, was sufficient to establish an issue of fact as to whether defendant had constructive notice of the alleged hazard.

Plaintiff testified that she felt something slippery under both her feet and that after she had fallen she observed ice on the ground beneath her. She identified the location of the ice on photographs of the scene, and described the ice as approximately one inch thick and extending seven to eight feet to the left and approximately two to three feet to the right. In addition, weather data submitted by plaintiff established that the temperature fell below freezing every day prior to March 14, 2007, the date of plaintiff's accident. This evidence concerning the nature of the ice and the climactic conditions is sufficient, at this stage, to raise a triable issue of fact (*see Ralat v New York City Hous. Auth.*, 265 AD2d 185 [1999] [firsthand observations of icy condition, in addition to weather data establishing residual accumulation from earlier storms, constituted sufficient evidence from which a jury could infer that plaintiff's fall was caused by preexisting ice]; *Tubens v New York City Hous. Auth.*, 248 AD2d 291, 292 [1998] [weather data, in addition to plaintiff's firsthand observation of the condition of the steps at the time of her fall, namely, that they were covered with hard ice that was thick, old and dirty, provided sufficient evidence from which a jury could infer that her fall was caused by the preexisting ice]; *Candelier v City of New York*, 129 AD2d 145 [1987] [jury could reasonably infer from plaintiff's testimony concerning ice on which he slipped, which he described as one or two inches thick, hard, slippery, bumpy and uneven, that ice had existed for a period of at least seven days, and had not developed solely as a result of snowfall on the days immediately preceding the accident]; *see also Rivas v New York City Hous. Auth.*, 261 AD2d 148 [1999] [weather conditions, including temperatures consistently around freezing for the three-day period before plaintiff's accident, supported conclusion that plaintiff fell on preexisting ice, not fresh snow]).

In this case, unlike storm-in-progress cases such as *Candelier*, we are not presented with the difficulty of determining whether a fall was attributable to old ice, as opposed to freshly accumulating snow. In this case, the only evidence in the record is that plaintiff fell on an extensive ice plate, described as one inch thick and extending seven feet across. The evidence supports a reasonable inference, given the freezing temperatures in the month of February in Upstate New York, that plaintiff fell on an old accumulation of ice (*see Sprague v Profoods Rest. Supply, LLC*, 77 AD3d 585 [2010]; *Walters v Costco Wholesale Corp.*, 51 AD3d 785 [2008] [testimony that icy condition was visible immediately after plaintiff's fall, together with evidence that there was precipitation and intermittently freezing temperatures on the days prior to plaintiff's fall, raised a triable issue of fact]).

The dissent asserts that plaintiff failed to establish the origin of the ice patch on which she slipped, citing to *Lenti v Initial Cleaning Servs., Inc.* (52 AD3d 288 [2008]).[2] However, it may reasonably be inferred from plaintiff's description of the ice, the photo, and the climatological data showing freezing temperatures that the ice was attributable to a prior winter storm. We accordingly find, at this stage, that plaintiff has sufficiently raised a triable issue of fact. Concur—Andrias, J.P., Moskowitz and Manzanet-Daniels, JJ.

Catterson and Román, JJ., dissent in a memorandum by Román, J., as follows: Because I believe that defendant established prima facie entitlement to summary judgment and that plaintiff failed to raise a triable issue of fact on the issue of notice, defendant is entitled to summary judgment, and therefore I dissent.

The instant action is for personal injuries allegedly sustained by plaintiff when she slipped and fell on ice on the sidewalk abutting premises owned and maintained by the defendant. Defendant moved for summary judgment and the motion court, both rejecting defendant's expert evidence and finding that defendant did not establish an absence of constructive notice, denied defendant's motion, concluding that defendant failed to establish prima facie entitlement to summary judgment.

In support of its motion for summary judgment, defendant

2. *Lenti*, as well as *Bernstein v City of New York* (69 NY2d 1020 [1987]), cited by the dissent, were also storm-in-progress cases in which it was incumbent on the plaintiffs to demonstrate that they slipped on old accumulations of ice, as opposed to on freshly fallen snow, since the defendant would not be liable if the plaintiff had fallen during a storm in progress. It is logical, in this context, that a court would speak in terms of the origins of the patch of ice in question. Here, the condition of the ice itself gives rise to an inference that it was of longstanding duration.

submitted plaintiff's deposition testimony that on Wednesday, March 14, 2007, at 9:30 P.M., she slipped and fell on ice while traversing the sidewalk abutting premises located at 193 Broadway, Newburgh, New York. Plaintiff, a resident of New York City, was in Newburgh visiting her boyfriend. She had been in Newburgh since March 11, 2007, the preceding Sunday, and had remained indoors until shortly before the instant accident. Plaintiff did not see the ice before her fall, but based on post-fall observations described the patch as large and spanning several feet. She had no idea when it had last snowed and saw no other ice or snow prior to her fall. Defendant also submitted two affidavits from a meteorologist, who rendered an opinion based on his review of climatological records chronicling the weather in the area where plaintiff alleges to have slipped. Defendant's meteorologist opined that based on the unusually high temperatures existing on March 14, 75 degrees at 3:00 P.M. and 57 degrees at 9:30 P.M., the conditions were not conducive to ice existing at the location of this accident. Thus, the meteorologist concluded that on March 14 at 9:30 P.M., there was no ice or snow on the ground at the location of this accident. The meteorologist further stated that in the seven days preceding this accident, there had been no wintry precipitation; the only precipitation consisted of light rainfall on March 10 to 11, which ceased after 3:00 A.M. on the 11th. Thereafter on March 10 through 13, the temperatures were in the 50s and 60s, thus any residual snow would have melted by March 12.

In opposition to defendant's motion, plaintiff submitted an affidavit, wherein she stated that a photograph annexed thereto was a fair and accurate representation of the patch of ice upon which she fell, and that the ice was hard, dry, and an inch thick. Plaintiff also submitted an affidavit from her boyfriend, wherein he states that he took the photograph. He likewise stated it was a fair and accurate representation of the patch of ice upon which plaintiff fell, describing in the same way as plaintiff. Lastly, plaintiff submitted climatological records evincing that in the days prior to her fall the temperatures had dipped below freezing.

The mere presence of an ice patch, by itself, does not cast a defendant in negligence thereby making him or her liable for an accident (*Lenti v Initial Cleaning Servs., Inc.*, 52 AD3d 288, 289 [2008]). Instead, to establish liability for an icy condition, it must be proved that a defendant had either actual or constructive notice of the icy condition (*Simmons v Metropolitan Life Ins. Co.*, 84 NY2d 972, 973-974 [1994]; *Slates v New York City Hous. Auth.*, 79 AD3d 435, 436 [2010]; *Grillo v New York City*

*Tr. Auth.*, 214 AD2d 648, 648-649 [1995], *lv denied* 87 NY2d 801 [1995]). With respect to notice, the salient inquiry is whether there is "evidence from which it may be inferred that the ice on which [a plaintiff] slipped was present on the sidewalk for a long enough period of time before the accident that the party responsible for the sidewalk would have had time to discover and remedy the dangerous condition" (*Lenti* at 289). Liability hinges upon a defendant's remedial actions, if any, once it knows or should have known of an icy condition's existence. Therefore, when it is alleged that an icy condition existed for a protracted period of time because it is the direct result of prior precipitation or storm, a plaintiff must conclusively establish that the icy condition originated therefrom (*Bernstein v City of New York*, 69 NY2d 1020, 1022 [1987]; *Simmons* at 973-974; *Steo v New York Univ.*, 285 AD2d 420, 421 [2001]; *Fuks v New York City Tr. Auth.*, 243 AD2d 678, 678-679 [1997]; *Grillo* at 649). This is particularly true when the sole basis for notice is the length of time between an accident and a prior storm rather than actual notice of the condition by the defendant or prior observation of the condition such that constructive notice can be inferred.

Here, contrary to the motion court's decision and the assertions by the majority, defendant established prima facie entitlement to summary judgment. Defendant's meteorologist, based upon his review of pertinent climatological records, also submitted with defendant's motion, opined that given the weather conditions existing at the time of plaintiff's accident and in the seven days preceding it, there was no ice existing on the sidewalk where plaintiff alleges to have fallen. By establishing the absence of any ice at this location for at least two days prior to plaintiff's fall, defendant not only controverts the existence of any ice, but as relevant here, negates actual and constructive notice and thus establishes prima facie entitlement to summary judgment (*Perez v Canale*, 50 AD3d 437, 437 [2008] [climatological data tendered by defendant and relied upon by their expert established prima facie entitlement to summary judgment when the same evinced that it would have been impossible for there to have been an icy condition in the area of plaintiff's fall]; *Bonney v City of New York*, 41 AD3d 404 [2007]).

Any contention that the meteorologist's opinion was speculative is meritless since it was based on facts both in the record and personally known to him, e.g., the climatological reports (*see Cassano v Hagstrom*, 5 NY2d 643, 646 [1959]). The meteorologist's opinion was not wrought with bare allegations or conclusions, factually unsupported by the evidence and not personally known to him, such that it should have been

disregarded (*Amatulli v Delhi Constr. Corp.*, 77 NY2d 525, 533 [1991]; *Wright v New York City Hous. Auth.*, 208 AD2d 327, 331 [1995]). That the meteorologist did not review and comment on some of the evidence offered by the plaintiff, namely her testimony and a photograph of the condition does not alter my holding because his opinion is undergirded by the aforementioned climatological reports (*Perez* at 437). The majority's reliance on *Neidert v Austin S. Edgar, Inc.* (204 AD2d 1030 [1994]) is misplaced, since in that case the record indicates that the meteorologist opined "[b]ased upon his understanding of those general [weather] conditions" (*id.* at 1031), rather than based upon admissible climatological reports, as is the case here.

Additionally, any contention that defendant failed to negate constructive notice is similarly unavailing. Because defendant tendered climatological evidence negating the existence of the icy condition alleged, it was not necessary, as concluded by the motion court, to also establish the absence of constructive notice. Indeed under these circumstances, where the salient argument is that the condition alleged did not exist, the absence of any notice is necessarily inferred. Nevertheless, plaintiff's deposition testimony, tendered by the defendant, wherein she testified to not having seen the icy condition until after she fell, establishes the absence of constructive notice as a matter of law (*Pomahac v TrizecHahn 1065 Ave. of Ams., LLC*, 65 AD3d 462, 467-468 [2009]; *Anderson v Central Val. Realty Co.*, 300 AD2d 422, 422-423 [2002], *lv denied* 99 NY2d 509 [2003]; *McDuffie v Fleet Fin. Group*, 269 AD2d 575 [2000]; *Scirica v Ariola Pastry Shop*, 171 AD2d 859 [1991]).

Defendant having demonstrated prima facie entitlement to summary judgment, it then became incumbent upon plaintiff to raise a triable issue of fact by establishing the existence of the condition alleged and that defendant had prior notice of the same. While plaintiff's evidence established the existence of the icy condition, she failed to establish that defendant had any notice. Certainly nothing offered or argued by plaintiff establishes constructive notice. Moreover, contrary to her assertion, neither the photograph depicting the icy condition nor her and her boyfriend's affidavits describing the patch as hard, dry and one inch thick, mere descriptions of the condition of the ice and not its duration, are sufficient to raise an issue of fact as to constructive notice.

It is settled law that the mere presence of ice is insufficient to establish constructive notice of the same (*Lenti* at 289; *Steo* at 420-421). Moreover, neither the condition nor appearance of an icy condition, by itself, is dispositive on the issue of notice

(*Corsaro v Stop & Shop*, 287 AD2d 678 [2001] [brown and muddy ice, standing alone, insufficient to establish constructive notice]). In fact, the very same cases plaintiff cites in support of her contention that the description and condition of an icy condition is dispositive on the issue of constructive notice demonstrate the opposite. For example, in *Gonzalez v American Oil Co.* (42 AD3d 253 [2007]), the condition of the ice, namely large, dry, hard, and transparent, was not dispositive on the issue of constructive notice. Instead, notice was established and summary judgment denied because the ice in that case was covered with snow which climatological records showed had fallen no less than three hours prior to plaintiff's fall (*id.*). Thus, we concluded that under those circumstances the ice had existed for at least three hours and that defendant had constructive notice of it (*id.*). *Scott v Redl* (43 AD3d 1031 [2007]), another case cited by the plaintiff, is also at odds with plaintiff's assertion, since in that case constructive notice was premised not on the condition or appearance of the ice but on "an affidavit from an expert meteorologist who, after analyzing the weather conditions on the day of the accident and on the days preceding [it], concluded that the ice upon which the plaintiff allegedly slipped would have formed no later than 4:00 P.M. on the day before the accident, or 18½ hours earlier" (*id.* at 1033). Similarly, the litany of cases cited by the majority does not alter the above-cited and well-settled law and instead supports my conclusion. For example, in *Ralat v New York City Hous. Auth.* (265 AD2d 185 [1999]), the condition of the ice was not, as the majority represents, dispositive of the issue of notice. Instead, we held that plaintiff established constructive notice because "[witnesses] also stated that the icy 'problem' on the sidewalk *existed for at least a week prior* to plaintiff's accident . . . These first-hand observations of an icy condition in existence *well prior* to plaintiff's accident, in addition to the weather data establishing residual accumulation from earlier storms, constitute sufficient evidence from which a jury could infer that plaintiff's fall was caused by the pre-existing ice, and not the light snowfall on the day of the accident" (*id.* at 186 [emphasis added]). Thus, in *Ralat*, as in *Gonzalez* and *Scott*, the condition of the ice played no salient role in determining notice.

Plaintiff, in a final attempt at establishing constructive notice seeks to link the icy condition to a prior storm or a period of prior precipitation. While this is of course one way to establish the origin of an icy condition thereby establishing constructive notice (*see Bernstein* at 1022; *Simmons* at 973-974; *Steo* at 421; *Grillo* at 649), plaintiff fails to meet her burden since the evidence tendered must in fact link the condition to a prior storm

(*id.*). Here, plaintiff simply submits climatological records and merely asserts that dips in the temperature, to below freezing, confirm the patch's existence. There is no specific attempt, by an expert or anyone else for that matter, to particularize the weather pattern from which it can be inferred that the ice upon which plaintiff fell originated from prior precipitation or a previous storm. Here, in light of a continuously evolving weather pattern where the temperature rose well above freezing on several occasions, plaintiff's conclusory assertion fails to link the ice to a period of prior precipitation or a prior storm. Accordingly, I believe that plaintiff fails to raise an issue of fact sufficient to preclude summary judgment in defendant's favor. **[Prior Case History: 26 Misc 3d 1236(A), 2010 NY Slip Op 50411(U).]**