OPINION OF THE COURT
Doris Ling-Cohan, J.
It is ordered that this motion for summary judgment by defendant Earth Leasing Property Limited Liability Company is denied as explained below.
The main issue before the court is whether climatological records, without an expert affidavit, may be used to establish a prima facie case, entitling defendant to summary judgment in a slip and fall case involving an alleged icy condition. It appears that this issue has not been directly addressed by the courts.
Background
Plaintiff Maria Sikora alleges that on February 14, 2011, between 11:00 a.m. and 12:00 p.m., she was injured when she slipped and fell on a patch of ice covering the majority of the sidewalk abutting defendant’s property. (See notice of motion, exhibit L, examination before trial [EBT] of Maria Sikora at 28, lines 15-18; at 55, lines 5-9.) At her deposition, plaintiff testified that the weather was freezing, but it was not snowing, and she did not think it snowed the day before. (See id. at 40, lines 23-25; at 41, lines 2-6.)
Defendant has filed a motion for summary judgment, seeking to dismiss the complaint and all claims and cross claims. In support of its motion, defendant relies upon the certified records from the National Climatic Data Center, which show that the temperature on February 14, 2011, at the approximate time (be *281 tween 11:00 a.m. and 12:00 p.m.) of plaintiffs accident was above freezing, reaching as high as 53 degrees Fahrenheit, and had been above freezing, fluctuating from 35 to 53 degrees Fahrenheit, since approximately 8:51 a.m. the day before plaintiffs fall. (Notice of motion, exhibit K at 7-8.) Based solely on such certified climatological records, defendant argues that the icy condition alleged by plaintiff would not have formed.
Defendant also argues that it neither created nor had actual or constructive knowledge of any ice on the sidewalk on which plaintiff slipped and fell. In support, defendant submits an affidavit and deposition testimony from superintendent Mr. Gorge Cortes (Cortes), who is responsible, with the help of his coworker, for snow and ice removal at defendant’s property. (Notice of motion, exhibit N, aff of Cortes at 1, ¶ 3; see also notice of motion, exhibit M, EBT of Cortes at 13, lines 17-20; at 21, lines 16-17.) Cortes testified that, whenever it snowed, he and his co-worker would “always go outside to shovel the snow and the ice.” (Notice of motion, exhibit M, EBT of Cortes at 21, line 25.) Specifically, Cortes stated that it was his responsibility to start removing snow at 7:00 a.m. (Id. at 16, lines 16-17.) In his affidavit, Cortes further stated that, every morning at 8:00 a.m., he inspects the building inside and out for any maintenance issues, and that he would have checked carefully for any snow and ice on the sidewalk, and promptly removed same and salted the sidewalk, should there have been any snow or ice when he performed his morning inspections on the date of plaintiffs alleged accident. (Notice of motion, exhibit N, aff of Cortes at 3, ¶ 8.) Moreover, Cortes stated in his affidavit that he was “not aware of snow or ice ever remaining on the sidewalk after [he had] performed snow or ice removal.” (Id.) Furthermore, he stated that, to his knowledge, none of defendant’s maintenance activities ever caused snow or ice accumulation on the sidewalk where plaintiff allegedly slipped and fell. (Id. at 3, ¶ 9.)
In opposition, plaintiff argues that defendant has failed to meet its burden to establish prima facie entitlement to summary judgment. Plaintiff argues that defendant has failed to establish that it was physically impossible for ice to be present on the sidewalk at the time of the accident. Specifically, plaintiff argues that it is insufficient for defendant to rely solely on meteorological data regarding air temperature, without presenting further explanation or expert analysis. (See affirmation of plaintiffs counsel, Jesse M. Young, in opp, ¶ 10.) Plaintiff asserts that the days leading up to plaintiff’s accident were *282 extremely cold and that plaintiffs testimony that she saw water on top of the ice suggests the ice may have been in the process of melting at the time of her accident. (See id. ¶ 9.) Plaintiff contends that the process of ice fully melting takes a period of time and cannot cease to exist immediately when the air temperature rises above freezing. (Id.) In particular, plaintiff alleges that the temperature of the pavement is often lower than the temperature of the air and that, wet-bulb temperature[1] readings provide a more accurate basis for determining the rate at which ice melts. (See id. ¶¶ 7-8.) According to plaintiff, defendant’s arguments are based upon dry-bulb temperature[2] readings that do not provide an accurate understanding of the rate at which ice melts or whether the ice would have melted, which is determined by the wet-bulb temperature. (Id. ¶ 8.) Thus, plaintiff argues that the proof provided by movant is insufficient to establish that it was impossible for ice to exist as alleged by plaintiff. (See id.)
Moreover, plaintiff contends it is insufficient for defendant to rely on superintendent Cortes’ testimony to establish that it did not have notice of the ice on the sidewalk on which plaintiff allegedly slipped and fell. (Id. ¶¶ 14, 20.) Plaintiff maintains superintendent Cortes’ testimony is insufficient proof of defendant’s lack of notice because superintendent Cortes testified that he did not know the last time prior to the day of the accident that snow was removed from the sidewalk in front of defendant’s property, nor did he know whether ice was on the subject sidewalk on that day. (See id. ¶ 19; see also notice of motion, exhibit M, EBT of Cortes at 22.)
In reply, defendant maintains that plaintiff failed to rebut defendant’s prima facie entitlement to summary judgment of dismissal, as plaintiff submitted three articles printed from various websites regarding pavement and wet-bulb temperatures that are inadmissible proof, along with climatological data from the National Climatic Data Center for the month of February 2011, which defendant argues undermines plaintiffs assertions that the pavement was too cold for the snow to melt because it shows *283 that surface accumulations of snow and ice had been melting all month and there was no snow or ice on the ground on the day of plaintiffs alleged accident. (See reply affirmation of defendant’s counsel Alan S. Weiner at 5, ¶ 11; at 8-9, ¶ 18.) Defendant further asserts that plaintiff needed to retain an expert to qualify plaintiffs articles as admissible proof and to refute defendant’s prima facie evidence. (See id. at 7-8, ¶ 16.) Even if the articles were to be considered, defendant argues they fail to establish the principles for which plaintiff attempts to use them because, for example, plaintiff relies on one article to allege that wet-bulb temperature determines when ice melts rather than the dry-bulb temperature, however, the article she offers in support makes no such assertion. (See id. at 8, ¶ 17.)
Discussion
The standards of summary judgment are well settled. Summary judgment should only be granted if the moving party has sufficiently established that it is warranted as a matter of law. (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].) “The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].)
Once this showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact which require a trial of the action. (See e.g. Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Pemberton v New York City Tr. Auth., 304 AD2d 340, 342 [1st Dept 2003].) “In determining whether summary judgment is appropriate, the motion court should draw all reasonable inferences in favor of the nonmoving party and should not pass on issues of credibility.” (Garcia v J.C. Duggan, Inc., 180 AD2d 579, 580 [1st Dept 1992], citing Dauman Displays v Masturzo, 168 AD2d 204, 205 [1st Dept 1990].) The court’s role is “issue-finding, rather than issue-determination.” (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957] [internal quotation marks and citation omitted].) If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied. (See Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978].)
Here, defendant failed to meet its burden of demonstrating, prima facie, that it is entitled to summary judgment in its *284 favor, as a matter of law. First, it has failed to establish its core contention that, as a matter of law, an icy condition could not have existed. While CPLR 4528 permits records of weather observations taken under the direction of the United States Weather Bureau to be prima facie evidence of the facts stated (see CPLR 4528), the climatological reports submitted by defendant fail to establish conclusively that the alleged icy condition on which plaintiff fell could not have existed. Without other evidence, such data with regard to a mere 26 hours of above freezing temperatures, prior to plaintiffs fall, when considered in light of two straight weeks in which the minimum temperature fell at or was well below freezing prior to the date of plaintiffs accident, permits the reasonable inference that the alleged icy condition had not completely melted at the time of plaintiffs fall. (See Santiago v New York City Health & Hosps. Corp., 66 AD3d 435, 435 [1st Dept 2009] [finding defendant failed to establish prima facie entitlement to summary judgment, where the climatological reports it submitted permitted the reasonable inference that the icy condition existed as alleged by plaintiff]; Rodriguez v Bronx Zoo Rest., Inc., 110 AD3d 412, 412-413 [1st Dept 2013] [finding defendants failed to meet their initial burden on a motion for summary judgment, where the climatological records submitted left open a reasonable inference of the existence of the alleged icy condition]; cf. Perez v Canale, 50 AD3d 437, 437 [1st Dept 2008] [finding climatological data constituted prima facie evidence, where the expert meteorologist, relying upon such data, concluded as to the impossibility of precipitation-related ice or snow accumulation in the area where plaintiff fell].)
Defendant, herein, merely submitted certified climatological records to establish that the temperature was above freezing on the date and time of plaintiffs alleged accident, and had been so for approximately 26 hours prior to the alleged incident. According to the data recorded by the National Climatic Data Center, the temperatures above freezing ranged from 35 to 53 degrees Fahrenheit in the 26-hour period prior to plaintiffs fall, but the daily temperatures in the two weeks leading up to plaintiffs accident consistently fell to or below freezing temperatures. (Notice of motion, exhibit K at 7-8; affirmation of plaintiffs counsel, Jesse M. Young, in opp, exhibit C.)
• Notwithstanding its submission of the climatological records, defendant failed to show that ice under the specific conditions could not have existed. (See Santiago v New York City Health & *285 Hosps. Corp., 66 AD3d at 435 [finding defendant failed to meet its initial burden, where its climatological reports permitted the reasonable inference that the icy condition existed as alleged by plaintiff].) Significantly, defendant relies solely on climatological reports and does not provide any expert opinion or other evidence to satisfy its burden of proof.
Defendant’s reliance on Perez v Canale (50 AD3d 437 [1st Dept 2008]) and Daley v Janel Tower L.P. (89 AD3d 408 [1st Dept 2011]) is misplaced. In Perez, the defendant, unlike here, submitted an expert’s affidavit and the Appellate Division, First Department, specifically addressed the submission by defendants’ expert meteorologist:
“The climatological data relied upon by defendants’ expert meteorologist was prima facie evidence of the facts stated therein (CPLR 4528), and the expert permissibly concluded that due to temperatures . . . , it would have been impossible for there to have been a precipitation-related ice or snow accumulation in the vicinity of plaintiffs fall.” (Perez v Canale, 50 AD3d at 437 [emphasis supplied].)
In Daley, there is no indication in the short one-page decision, consisting of a mere three paragraphs, that an expert’s affidavit was not submitted. Moreover, said Court cites to Perez v Canale, in which an expert affidavit was submitted.[3] (Daley v Janel Tower L.P., 89 AD3d at 409.)
Contrary to defendant’s argument, it is not enough to merely show that ice would not form in certain temperatures, since ice that had previously formed may have continued to exist and may not have melted completely, despite a brief rise in temperature. Thus, mere climatological records, although prima facie evidence of the weather conditions stated therein (CPLR 4528), would not be dispositive as to whether ice, that was previously formed, would continue to exist in all situations. The brutal winter this past year of almost daily snow and frigid temperatures which enveloped this city for months has taught us all in New York City that, notwithstanding a two-day “heat wave” respite during one February weekend, when the temperature reached a high of 54 degrees Fahrenheit for two straight days, *286 there were still random blocks of ice and snow left on the street, which people had to maneuver around and/or dig their cars out of. (See National Oceanic and Atmospheric Administration, National Climatic Data Center, Quality Controlled Local Climatological Data for Central Park, New York City, for Feb. 2014.) Further, the court observes that, similarly, it is self-evident that, while ice cubes do not form in temperature conditions above freezing, ice cubes can and do exist in warmer weather, under certain conditions—an experience that anyone who has enjoyed a refreshing ice cubed drink in hot weather at the beach can attest to. Thus, given the lack of an expert affidavit concluding that, under the conditions of the case, no previously formed ice could have continued to exist during the relevant time period, movant’s summary judgment motion must be denied, as defendant only submits the climatological data on this issue.
Furthermore, defendant failed to provide prima facie evidence that it did not have actual or constructive notice of the existence of the icy condition, which allegedly caused plaintiff to fall. Defendant presented no evidence as to when the sidewalk was last inspected prior to plaintiffs alleged accident, or when snow or ice was last removed from the sidewalk. (See Rodriguez v Bronx Zoo Rest., Inc., 110 AD3d at 412-413 [finding defendants failed to meet their burden to establish lack of constructive notice, where defendant provided no evidence as to when the sidewalk was last inspected or cleaned of snow, ice, or other debris]; De La Cruz v Lettera Sign & Elec. Co., 77 AD3d 566, 566-567 [1st Dept 2010] [finding defendant failed to satisfy its initial burden of showing lack of constructive notice of the icy condition, where defendant provided no evidence of when defendants’ employees last inspected the sidewalk, of any snow or ice removal efforts taken on the day of plaintiffs fall].)
Significantly, here, defendant relies solely on the affidavit and deposition testimony of its superintendent, who could not conclusively state that he worked on the day of plaintiffs alleged accident. (Notice of motion, exhibit M, EBT of Cortes at 19, line 25; at 20, lines 2-3.) In his deposition testimony, the superintendent merely stated, “I do not remember but I believe so. I believe I did work that day.” (Id. at 20, lines 2-3.) Likewise, in his affidavit, the superintendent does not affirmatively state he was on duty at defendant’s building on February 14, 2011, the date of the accident. Instead, he states in the conditional tense,
*287 “I would have checked carefully for any snow and ice on the sidewalk when I performed my inspections on the mornings of February 13 and February 14 2011 [sic]. Had I observed any snow or ice on the sidewalk during either inspection I would have promptly removed both and salted the sidewalk.” (Notice of motion, exhibit N, aff of Cortes at 3, ¶ 8 [emphasis added].)
Further, the superintendent testified at his deposition that he did not keep any type of written record of snow or ice removal he performed as part of his job. (Notice of motion, exhibit M, EBT of Cortes at 19, lines 3-7.) Thus, defendant failed to demonstrate its entitlement to judgment of dismissal as a matter of law by showing that it did not have actual or constructive notice of the ice on the sidewalk in front of its property on which plaintiff allegedly slipped. (See Santiago v New York City Health & Hosps. Corp., 66 AD3d at 435 [finding defendant failed to meet its initial burden where defendant kept no records of alleged snow and ice removal practice and its witnesses could not recall whether or when snow or ice had been removed in the days prior to the accident]; Rodriguez v Bronx Zoo Rest., Inc., 110 AD3d at 412-413 [finding defendants failed to meet their initial burden where defendant’s supervisor had no personal knowledge of whether the alleged procedure in response to winter storms was followed, did not aver that she was present on day of storm or accident, and offered no evidence as to when the sidewalk had last been inspected or cleaned of snow, ice, or other debris]; De La Cruz v Lettera Sign & Elec. Co., 77 AD3d at 566-567 [finding defendant failed to satisfy its initial burden of showing lack of notice of the icy condition, where defendant’s president testified as to defendant’s general snow and ice removal procedures only, and also noting that defendant’s foreman’s affidavit was insufficient because, among other reasons, it was framed in the conditional tense and, thus, could not materially add to defendant’s president’s generalized testimony about company’s snow removal practices].)
Having failed to establish entitlement to summary judgment, the burden never shifted to plaintiff to raise a genuine issue of fact. Nevertheless, even assuming, arguendo, that defendant met its burden of proof, plaintiff successfully rebutted defendant’s evidence by her deposition testimony as to the existence of ice where she fell. (See Massey v Newburgh W. Realty, Inc., 84 AD3d 564, 567 [1st Dept 2011] [finding plaintiff may rebut defendant’s prima facie evidence, which consisted of meteorologi *288 cal data, by other evidence, including lay testimony or allegations regarding the weather conditions].) Here, plaintiff testified in her deposition that she slipped on ice that was covering most of the sidewalk abutting defendant’s property. (See notice of motion, exhibit L, EBT of Maria Sikora at 55, lines 5-9.) She further described that there was a small amount of water on top of the icy patch which caused her to slip. (Id. at 61, lines 19-23.) Plaintiff also provided climatological data indicating that the temperature in days preceding the accident fell to freezing or well below freezing. (Affirmation of plaintiffs counsel, Jesse M. Young, in opp, exhibit C.) Thus, plaintiff raised a triable issue of fact as to the existence of ice on the sidewalk where she allegedly slipped and fell. (See Massey v Newburgh W. Realty, Inc., 84 AD3d at 567.)
Decision
Accordingly, it is ordered that defendant Earth Leasing Property Limited Liability Company’s motion for summary judgment of dismissal is denied.

. “Wet-bulb temperature” is defined as “temperature indicated by a wet-bulb thermometer that is lower than the actual temperature of the air.” (Merriam-Webster Unabridged Dictionary, http://www.merriam-webster.com/ dictionary/wet-bulb%20temperature [accessed Oct. 9, 2014].)

. “Dry-bulb temperature” is defined as “temperature indicated by a dry-bulb thermometer that is the actual temperature of the air.” (Merriam-Webster Unabridged Dictionary, http://www.merriam-webster.com/dictionary/drybulb%20temperature [accessed Oct. 9, 2014].)

. The court notes that for an expert affidavit to be conclusive, it would appear that such affidavit must also address whether such expert finding would change depending on the size of the initial block of ice at the start of the period in which the temperatures were above freezing. If the initial icy condition was a mountain of ice, it may reasonably be inferred that it would take longer to melt than an inch of ice.